UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KIMBERLY COUNCIL and LINDA COUNCIL,

        Plaintiffs

        -against-

BETTER HOMES DEPOT, INC., et. al.,

        Defendants.

----------------------------------------------------------------X

MEMORANDUM & ORDER

04 CV 5620 (NGG) (KAM)

GARAUFIS, District Judge.

Plaintiffs Linda Council and Kimberly Council ("Councils" or "Plaintiffs") filed a

complaint on December 22, 2004, pleading ten causes of action relating to their purchase of a

home in 1999, including multiple acts of fraud, professional malpractice, and violation of the

New York State Deceptive Practices Act under General Business Law § 349 ("GBL § 349"), the

federal Equal Credit Opportunity Act ("ECOA") under 15 U.S.C. § 1691, the federal Truth in

Lending Act ("TILA") as codified in 15 U.S.C. § 1601, and the federal Fair Housing Act

("FHA").  (See Compl. at 3-8.)

Some of the Defendants now move to dismiss pursuant to Rules 12(b)(1)[1] of the Federal

Rules of Civil Procedure for the dismissal of Plaintiff's complaint and co-defendants' cross-

---

[1] Although the moving Defendants cite to both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ.
P. 56, the court reads this motion simply as a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(1).  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) can be converted into a summary
judgment motion under some circumstances, such as the presentation of evidence outside the
pleadings.  "The presentation of affidavits on a motion under Rule 12(b)(1), however, does not
convert the motion into a motion for summary judgment under Rule 56."  Alliance For
Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.8 (2d Cir. 2006).

claims against Better Homes Depot ("BHD"), Eric Fessler ("Fessler"), Madison Home Equities, Inc. ("MHE"), Nadine Malone ("Malone"), and Paul Yeager ("Yeager"). Defendant Steven Weinstock ("Weinstock") joins this motion.[2] These Defendants move for dismissal pursuant to the Rooker-Feldman doctrine, the doctrine of res judicata, and expired statute of limitiations. (Joint Mem. L. Supp. Mot. Dismiss ("Def. Mot.") at 1-2; Aff Supp. Def. Weinstock's Joinder Mot. Dismiss at 2-3.)[3]

For the reasons set forth below, Movants' motion to dismiss is DENIED.

## I.    BACKGROUND

The facts as stated in the Complaint are deemed true for the purposes of this motion. See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992). Plaintiffs are joint owners of residential real property located at 102 Etna Street, Brooklyn, New York. (Compl. ¶ 5.) The Councils' mortgage was originated by the lender MHE and insured by co-defendant United States Department of Housing and Urban Development ("HUD"). The mortgage was later assigned to Chase Mortgage Company West ("Chase"). (Id. at ¶ 23.)

In or around August 1998, Linda Council and her daughter, Kimberly Council, African-American prospective homebuyers, contacted BHD about becoming first-time homeowners. (Compl. at ¶¶ 34-35.) Linda Council spoke with a BHD broker who endeavored to convince her

---

[2] In this Memorandum & Order ("M&O"), the defendants who brought this motion will collectively be referred to as "Movants" or "moving Defendants." Better Homes Depot and Eric Fessler will collectively be referred to as "BHD". Madison Home Equities, Inc., Nadine Malone, and Paul Yeager will collectively be referred to as "MHE."

[3] Def. Mot. is not paginated for the first five pages. I therefore assign page numbers to pages 1-5 consecutively. From the sixth page (marked "7"), I defer to the pagination of the Movants.

that she should purchase a property far more expensive than what she could in fact afford. (Id. at ¶¶ 37-38.)

The BHD broker persuaded the Councils to purchase a property located at 102 Etna Street, in Brooklyn, for $203,477. (Id. at ¶¶ 49, 76.) The sale price as represented to the Councils was based on a fraudulently inflated appraisal that MHE had commissioned. (Id. at ¶¶ 63-68.) BHD had purchased the house less than six months earlier at $131,000, and had illegally converted the property to a two-family home without permit or inspections. (Id. at ¶¶ 56-57, 65.)

BHD referred Plaintiffs to MHE, a lender that BHD routinely used to further BHD's lending scheme. (Id. at ¶ 45.) In the application for mortgage insurance submitted to HUD, BHD and MHE falsified Plaintiffs' income, claiming that the Councils earned more than they actually did. (Id. at ¶¶ 47-48.) Plaintiffs purchased 102 Etna Street through a mortgage loan originated by MHE and insured by HUD. (Id. at ¶ 76-78.) At the closing on January 18, 1999, attorney Steven Weinstock appeared and, in collusion with BHD and MHE, falsely stated that he represented Plaintiffs and that he had reviewed the closing documents. (Id. at ¶¶ 69-75.) After the closing, the note and mortgage originated by MHE was assigned to Chase. (Id. at ¶ 92.)

In August 2002, Chase brought a foreclosure action against Plaintiffs in Kings County Supreme Court; however, the Councils were not served the Summons and Complaint. (Aff. Pl. Kimberly Council Opp. Joint Mot. Dismiss ("Council Aff.") at ¶ 6.) When the Councils did not appear in court, the court issued a default Judgment of Foreclosure and Sale. After learning of the foreclosure by default, the Councils consulted with a bankruptcy lawyer and filed a bankruptcy petition, which stayed the state court foreclosure action and sale of the home. (Id. at ¶ 8.) The Councils filed the instant complaint on December 22, 2004.

HUD brought an earlier motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). HUD's motion was denied by the court on January 13, 2006. Defendant Chase was dismissed under a stipulation signed by all parties and ordered by the court on March 27, 2006. That stipulation ratified a settlement agreement signed by Chase and the Plaintiffs on August 25, 2005. (See Docket Entry No. 55.) Under the settlement agreement, Chase agreed to reinstate Council's mortgage upon payment of a lump sum of $5,000, representing a compromise by Chase of the actual arrearage owed under the Mortgage. (Id.)

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept all material factual allegations in the complaint as true. See Atlantic Mut. Ins., 968 F.2d at 198. "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no sets of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, and "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" Aurecchoine v. Schoolman Transp. System, Inc., 426 F.2d 635, 638 (2d Cir. 2005) (internal citations omitted). When deciding a 12(b)(1) motion for dismissal based on lack of subject matter jurisdiction, the court should not draw "argumentative inferences" in favor of the party asserting jurisdiction. See Atlantic Mut., 968 F.2d at 198 (internal citations omitted).

## III.    DISCUSSION

Movants submit that the court lacks subject matter jurisdiction in this case. First, the

4

Movants argue that the doctrine of res judicata bars Plaintiffs' claims against them because Chase previously obtained a judgment of foreclosure and sale against the Councils in state court in 2003. (Def. Mot. at 2.) Movants further contend that res judicata prevents Plaintiffs from attacking the validity of their loan because Linda Council ratified the loan in her confirmed Chapter 13 bankruptcy plan, and prevents Chase from asserting cross-claims against Madison. (Def. Mot. at 2.)

Next, Movants argue that the court does not have subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. (Def. Mot. at 1-2.) Finally, Movants state that the alleged violations of the TILA, ECOA, the FHA, and GBL § 349 are time-barred by their respective statutes of limitation. (Def. Mot. at 2.) I consider each of these arguments in turn.

## A.    **Preclusion**

The Movants raise three grounds for dismissal on res judicata grounds. The Movants argue that the Plaintiffs are estopped from their claims because of a Judgment of Foreclosure and Sale issued by a New York state court against the plaintiffs, and Linda Council's Chapter 13 bankruptcy plan. The Movants further argue that Chase is foreclosed from making cross-motions because of the state Judgment. Although the term "res judicata" is often used broadly to refer to both claim preclusion and issue preclusion, they are distinct doctrines. I refer to claim preclusion as res judicata and issue preclusion as collateral estoppel. Where applicable, I consider the Movants' arguments under both res judicata and collateral estoppel.

Res judicata, or claim preclusion, precludes claims where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have

been, raised in the prior action." <u>Monahan v. New York City Dep't of Corrections</u>, 214 F.3d 275, 284 (2d. Cir. 2000).

Collateral estoppel, or issue preclusion, bars re-litigation of an issue of law or fact that was "raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." <u>Nat'l Labor Relations Bd v. United Technologies Corp.</u>, 706 F.2d 1254, 1260 (2d Cir. 1983).

A federal court must apply the rules of preclusion of the state in which the prior judgment was rendered. <u>See</u>, <u>e.g.</u>, <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 166 (2d Cir. 2000); <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 481-82 (1982). 28 U.S.C. § 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged. New York has adopted a transactional test for res judicata issues, which defines a claim or cause of action as coterminous with the underlying factual transaction. <u>Smith v. Russell Sage College</u>, 54 N.Y.2d 185, 192-93 (N.Y. 1981). "A 'cause of action' may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery." <u>Id</u>. (quoting <u>Reilly v. Reid</u>, 45 N.Y.2d -24, 29 (N.Y. 1978)).

*1.      State Judgment of Foreclosure and Sale*

Movants argue that Plaintiffs "had the opportunity to interpose an answer in the foreclosure action, and to assert affirmative defenses and/or counterclaims and/or third-party claims sounding in fraud, conspiracy to commit fraud, and alleged violations of the TILA, the ECOA, and N.Y. GBL § 349." (Def. Mot. at 12.) The Movants argue that the relief the Councils

seek is inconsistent with the state court's judgment. Although the Movants label this argument as res judicata, usually understood as claim preclusion, it is more properly understood as collateral estoppel or issue preclusion.

Plaintiffs argue that the parties' subsequent settlement rendered the state default judgment's res judicata effect moot. (Pls.' Corrected Mem. L. Opp. Joint Mot. Dismiss ("Pls.' Resp.") at 2-5.) However, the state judgment of foreclosure and sale continues to have preclusive effect unless and until it is vacated. See, e.g., Aetna Casualty & Sur. Co. v. Home Ins., 882 F. Supp. 1355, 1357 (E.D.N.Y. 1995); United States Bancorp Mortg, Co. v. Bonner Mall Pshp. ("Bancorp Mortg."), 513 U.S. 18, 29 (1994). Chase has agreed to apply to the state court to vacate the default judgment of foreclosure and sale, (Affidavit of Richard J. Wagner, Esq. in Opposition to Joint Motion to Dismiss ("Wagner Aff."), at ¶ 3), however there is no evidence that a vacatur has occurred. This fact is irrelevant, however, because an analysis of res judicata and collateral estoppel reveals that neither theory provides grounds for dismissing this action as a result of the state judgment.

    *a.*    *Res Judicata*

As a primary matter, res judicata only bars claims when the prior court action had a final adjudication. A judgment by default may be the basis for claim preclusion to the same extent as any other valid, final judgment. Morris v. Jones, 329 U.S. 545, 550-51 (1947) (judgment in absence of fraud or collusion has res judicata effect even when obtained by default). Under New York law, it is established that a decision granting a judgment of foreclosure and sale on default constitutes a decision on the merits. See, e.g., Doural v. Bank of New York, 2005 WL 408050 (E.D.N.Y Feb. 18, 2005); Goldman v. Fairbanks Capital Corp., 348 F.Supp. 2d 115, 117-118

(S.D.N.Y. 1984).

However, for res judicata to have preclusive effect, the former and pending actions must have the same parties or, alternatively, the current parties must be in privity with the former parties. Here, the Movants were not parties in the state court action. Privity requires that a nonparty to an earlier litigation must have had his or her interests adequately represented in the prior proceeding by reason of identity of legal interest or control in the first action. See, e.g., City of New York v. Beretta, 315 F. Supp 2d 256 (E.D.N.Y. 2004). New York state case law provides that privity extends to parties "who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277 (N.Y. 1970); see also Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997). This standard would give privity status to any future *successors* to Chase's property interest in the Councils' mortgage, but it does not extend privity to Chase's *predecessors*, such as the Movants in this case. The logic of this conclusion is clear: Chase shares the interests of future mortgage-holders in preserving the value of the loan and collateral. However, Chase does not share the interests of the Movants in this case in defending the Movants' compliance with federal law in originally issuing the mortgage. As is discussed in more depth below, the doctrine of "holder in due course" relieves purchasers of a negotiable instrument from fully investigating every possible legal defect in that transaction.

Finally, res judicata only applies where the prior litigation was on the same issue as the claim in question. As discussed previously, New York has adopted a transactional test for res judicata issues. All claims arising out of the same transaction or series of transactions are barred,

even if based on different theories of relief or seeking different remedies.  New Horizons

Investors v. Marine Midland Bank, N.A., 248 A.D.2d 449, 450 (N.Y. App. Div. 1998).  "A party

cannot escape the requirements of full faith and credit and res judicata by asserting its own

failure to raise matters clearly within the scope of the prior proceeding."  Kremer v. Chem.

Constr. Corp., 456 U.S. 461, 466 (1982) (quoting Underwriters National Assur. Co. v. North

Carolina Life & Accident & Health Insurance Guaranty Assn., 455 U.S. 691, 710 (1982)).

   As set forth in Reilly v. Reid, the New York state test for what constitutes the same

transaction or series of transactions follows the exemplary standard as recorded by the

Restatement 2d of Judgments § 61.  The determination depends on how the facts are "related in

time, space, origin, or motivation, whether they form a convenient trial unit, and whether . . .

their treatment as a unit conforms to the parties' expectations or business understanding or

usage."  Reilly, 45 N.Y.2d at 30; see also, Iwachiw v. N.Y. City Bd. of Educ., 194 F. Supp. 2d

194, 202 (E.D.N.Y. 2002); Russell Sage Coll., 54 N.Y.2d at 192-93; Dep't of Hous. Pres. & Dev.

v. Ieraci, 156 Misc. 2d 646, 651 (N.Y. Civ. Ct. 1992).

   The claims in this case share certain factual elements with the prior foreclosure claim.

The Councils' mortgage is relevant, even central, to both matters.  Nonetheless, the state case was

ultimately caused by the Councils' failure to make mortgage payments to Chase, a transaction not

at issue in this case.  This case, in contrast, deals with the Defendants' actions in issuing the

mortgage.  Given the differences in the cases, the state court judgment would not have preclusive

effect over this case unless the Councils had been required to raise these claims in the state case.[4]

_____

   [4] The present case is distinct from cases cited by Movants.  For example, in Drew v.
Chase Manhattan Bank, the court found that the plaintiff homeowner's claims were precluded
due to a previous action for foreclosure.  The present case is distinguishable from Drew, because

The New York rule for necessary joinder of parties requires "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants." N.Y. C.P.L.R. § 1001(a). Overall, the New York Rules for compulsory joinder must be read against their motivating purpose, which is "to prevent duplicative litigation and to protect the rights of persons who may be adversely affected by the outcome." Buechel v. Bain, 275 A.D.2d 65, 72 (N.Y. App. Div. 2000) (citing Manufacturers Hanover Trust Co. v. Crossland Sav., 177 A.D.2d 78, 79, 82 (N.Y. App. Div. 1992)); Parker v. 151 E. 83rd St. Tenants Corp., 171 A.D.2d 599 (N.Y. App. Div. 1991)).

The Movants were not necessary to accord complete relief to the parties (i.e., the Plaintiffs and Chase) in the state foreclosure action, because the state action involved the current Plaintiffs' responsibility to make mortgage payments to Chase, arguably a holder of the mortgage in due course. It did not require any determination of the moving Defendants' liability to the Plaintiffs for the alleged wrongdoing under TILA, ECOA, FHA, and GBL §349.

Moreover, the Councils could not have brought the present claims against Chase in the state case without joining the Movants. The holder in due course doctrine, as articulated by the Uniform Commercial Code (UCC) and accepted by New York law, attempts to facilitate the transaction of negotiable instruments by providing that good-faith purchasers will be paid according to their personal intent and conduct. A holder in due course takes a purchased instrument free of virtually all claims and defenses. See, e.g., Wilson v. Toussie, 260 F. Supp. 2d

---

the Movants were not party to the prior action. In Drew, the homeowner and Chase participated in both actions. Drew, 1998 WL 430549, at *6-*7.

530, 541 (E.D.N.Y. 2003).

A purchaser may become a holder in due course, as defined by UCC § 3-302(2), where he is "(1) a holder, (2) of a negotiable instrument, (3) who took it for value, (4) in good faith, and (5) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of another." Hartford Accident. & Indem. Co. v. Am. Express Co., 74 N.Y.2d 153, 159 (N.Y. 1989). The record provides no evidence to rebut the presumption that Chase purchased the mortgage in good faith and without notice that it was dishonored or had any defense or claim against it. See id. As a holder of the Plaintiffs' mortgage in due course, Chase was free of most claims and defenses surrounding the mortgage, including those presently pending. See, e.g., Wilson, 260 F. Supp. 2d at 541. Preclusive effect does not apply where, as here, the prior action differed so substantially that the instant claims would have been futile in the prior action.

b.      *Collateral Estoppel*

Under New York law, issue preclusion applies if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Phifer v. City of New York, 289 F.3d 49, 56 (2d Cir. 2002). "The burden rests upon the proponent of collateral estoppel to demonstrate that the issues in question were actually and necessarily decided." Richards v. City of New York, 2003 U.S. Dist. LEXIS 8037, at *26-*27 (S.D.N.Y. May 7, 2003).

In this case, the Movants argue that Plaintiffs cannot succeed on the merits in their case because the relief they seek, to wit, the recision of their mortgage, is barred by collateral estoppel. The Movants argue that the state court judgment of foreclosure affirmed the validity of the

11

Council's mortgage and, therefore, its recision is not an available remedy.

The general federal rule is that "a default judgment will not support the application of collateral estoppel." Bush v. Balfour Beatty Bahamas, Ltd., 62 F.3d 1319, 1323 (11th Cir. 1995) (citing Restatement (Second) of Judgments (1982), as well as cases from the Third, Fourth, Sixth, and Ninth Circuits). "And, under New York law, collateral estoppel forecloses only those issues that have been 'actually litigated and determined in a prior action,' and '[a]n issue is not actually litigated if there has been a default.'" Yoon v. Fordham University Faculty and Administrative Retirement Plan, 263 F.3d 196, 202 n.7 (2d Cir. 2001) (quoting Pigliavento v. Tyler Equip. Corp., 650 N.Y.S.2d 414, 415 (3d Dep't 1996)). Therefore, issues decided in the state judgment for foreclosure and sale do not have preclusive effect in this case. Even if the state judgment of foreclosure and sale can be interpreted to have decided the validity of the Councils' mortgage, the issue was not fully and fairly litigated and therefore does not trigger the preclusive effect of collateral estoppel.

*2.      Chapter 13 Bankruptcy Plan*

Movants argue that Linda Council's Chapter 13 bankruptcy plan has the res judicata effect of ratifying the loan. As a general matter, the Second Circuit has determined that bankruptcy proceedings have preclusive effect between debtors and lenders for any issues that were, or could have been, raised. See Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991); Corbett v. MacDonald Moving Serv., Inc., 124 F.3d 82 (2d Cir. 1997). In the instant case, the Movants were not lenders for the purposes of the bankruptcy proceedings, nor were they in privity with the lender, Chase. For that reason, res judicata does not apply.

Alternately, I read Movants' argument with respect to the bankruptcy action as one of

issue preclusion, which does not require involvement of the same parties. As previously stated, New York law applies issue preclusion where (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. See Phifer, 289 F.3d at 56. The bankruptcy case considered Linda Council's debt to Chase and how she could repay it. The case did not, however, examine whether the original mortgage was valid, or whether the defendants in this case were responsible under the claims now asserted by Plaintiffs. I therefore find no rationale for applying preclusive effect to Linda Council's Chapter 13 bankruptcy plan.

3.      *Chase's Cross-claims*

This motion is now moot pursuant to the parties' settlement by stipulation so ordered by the court on March 28, 2006. (See Docket Entry No. 95.)

## B.      **Rooker-Feldman**

Movants next move to dismiss based on lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. The Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 281 (2005). Thus, to properly invoke Rooker-Feldman, the defendant must show that the plaintiff: (1) lost in state court; (2) complains of injuries caused by that state court judgment; (3) invites the district court to review and reject the state court judgment; and (4) commenced the federal suit after entry of the state court judgment. Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

Movants in this case argue that "even a cursory review of the relief sought in Plaintiffs'

complaint that Plaintiffs commenced in the instant proceeding [is] to impermissibly invite this Court's review and rejection of the state court Judgment of Foreclosure and Sale." (Def. Mem. at 9.) Plaintiffs counter that the Movants' argument is made moot by the settlement between Chase and the Plaintiffs or, alternatively, that this action does not present the same factual or legal issues that were presented in Kings County Supreme Court.

1.    *Lost in State Court, and Commenced the Federal Suit after Entry of the State Court Judgment*

The Supreme Court has held that the <u>Rooker</u>-<u>Feldman</u> doctrine is only properly invoked when a final state court decision has been reached. <u>Exxon Mobil</u>, 544 U.S. at 292-93; <u>see also</u> <u>Dornheim v. Sholes</u>, 430 F.3d 919, 923 (8th Cir. 2005) ("There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action."). Plaintiffs have not alleged, and there is nothing in the record to show, that Plaintiffs appealed the state court default judgment. A judgment becomes final when the state court ruling carries preclusive effect. <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 & n.10 (1st Cir. 2005). Therefore, the state court proceeding ends for <u>Rooker</u>-<u>Feldman</u> purposes after a plaintiff allows the time for appeal to lapse without filing an appeal in state court. Although Plaintiffs argue that the state judgment will be vacated, I am not aware that such an action has occurred as of yet. As the state judgment was issued almost four years ago, the judgment is considered final.[5]

It is also uncontested that Plaintiffs commenced the federal suit after entry of the state court judgment.

---

[5] "An appeal as of right must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from." N.Y. C.P.L.R. § 5513(a)

2.   *Complains of Injuries caused by that State Court Judgment and Invites the District Court to Review and Reject the State Court Judgment*

The <u>Exxon Mobil</u> Court held that under certain circumstances, claims that collaterally attack a state court judgment are not barred under the <u>Rooker</u>-<u>Feldman</u> doctrine. "If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" <u>Exxon Mobil</u>, 544 U.S. at 293 (quoting <u>GASH Assocs. v. Village of Rosemont</u>, 995 F.2d 726, 728 (7th Cir. 1993)).

The bankruptcy proceeding did not reach the question of whether the origin of the Council's mortgage was improper and certainly did not examine the mortgage's propriety under TILA, ECOA, FHA, and GBL § 359. I find that the claims in this case are sufficiently independent of the state court judgment so as to not fall under the <u>Rooker</u>-<u>Feldman</u> doctrine.

## C.   **Equitable Tolling**

Movants argue that Plaintiffs' claims are all time barred. Specifically, Movants contend that the Plaintiffs' claims accrued on January 18, 1999 when the loan closed, the transaction was consummated, and the funds were disbursed. (Def. Mem. at 14.) According to the Movants, claims under TILA are limited to one year generally or three years for rescission of the loan. (<u>Id</u>. at 14-15.) Both ECOA and FHA contain a two-year statute of limitations for private actions. Finally, the state law, GBL § 349, limits claims to three years after the violation. The Plaintiffs counter that the Defendants' alleged fraudulent behavior would support application of the equitable tolling doctrine if proven.

*1. Federal Legal Standard (TILA, ECOA, FHA)*

For the purposes of TILA, ECOA, and FHA, I examine the federal standard for equitable tolling. The federal doctrine of equitable tolling may supersede an expired statute of limitations where a plaintiff establishes that (1) the defendant concealed from her the existence of her cause of action during the statutory period, (2) she commenced the action within the statutory period from the time that she became aware of her claim, and (3) her continuing ignorance was not attributable to lack of diligence on her part. State of New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d. Cir. 1988) (citing City of Detroit v. Grinnel Corp., 495 F.2d 448, 460 (2d Cir. 1974)); Baskin v. Hawley, 807 F.2d 1120, 1131 (2d Cir. 1986); Cerbone v. Int'l Ladies Garment Workers Union, 768 F.2d 45, 48 (2d Cir. 1985) (citing Grinnel Corp., 495 F.2d at 461.).

Under the equitable tolling doctrine, the statute does not begin to run until the plaintiff actually has or should have by exercise of reasonable diligence become aware of her legal claim. Cerbone, 768 F.2d at 48 (citing Grinnel Corp., 495 F.2d at 461). "The sina quo non of fraudulent concealment is that the defendant fraudulently concealed from the plaintiffs [their] cause of action during the time in which the plaintiff[s] could have brought that action." McKay v. Sacks, 2005 WL 1206810, at *5 (E.D.N.Y. May 20, 2005) (quoting Cardiello v. The Money Store Inc., 2001 WL 604007 (S.D.N.Y. June 1, 2001)).

*a. Concealment*

A plaintiff may prove concealment by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of her legal claim or that the defendant's wrongdoing is by nature self-concealing. Hendrickson Bros., Inc., 840 F.2d at 1083 (citing Hobson v. Wilson, 737 F.2d, 33-34 (D.C. Cir. 1984); Colorado ex. re. Woodward v. Western Paving Construction

16

<u>Co.</u>, 833 F.2d 867 (10th Cir. 1987)).

As alleged, the record indicates that the Movants, by employing defendant Steven Weinstock as legal counsel, took affirmative measures to conceal their wrongdoing. In addition, the nature of the facts alleged by Plaintiffs resemble cases of fraud and discrimination that Second Circuit courts have recognized to be self-concealing, including some cases involving these Defendants. <u>See</u> <u>Phillips v. Better Homes Depot</u>, No. 02 Cv 1168 (E.D.N.Y. Nov. 12, 2003) (Korman, J.); <u>Laboy v. Better Homes Depot</u>, No. 03 Cv 4271 (E.D.N.Y., Jul. 14, 2004) (Korman, J.); <u>Polentsky v. Better Homes Depot</u>, 97 N.Y.2d 46, 54 (2001). A victim of discrimination may not know that he or she has been the target of discrimination until meeting other victims or becoming familiar with lending practices in minority communities. <u>Phillips</u>,, slip op. at 42-44 (citing <u>Jones v. Ford Motor Credit Co.</u>, 2002 WL 88431, at *5 (S.D.N.Y January 22, 2002)). It is reasonable that the Plaintiffs were not aware that they were the victims of wrongdoing until they obtained legal counsel. This is discussed further, <u>infra</u>.

*b. Due Diligence*

The plaintiff invoking equitable tolling must establish that he or she acted with reasonable diligence and that the continued ignorance of her claim was not due to negligence. <u>Coveal v. Consumer Home Mortgage, Inc.</u>, 2005 WL 704835 (E.D.N.Y. March 29, 2005). Where regulatory or other proceedings involving the defendant's wrongdoing are recorded, the plaintiff may be held to a standard of inquiry notice and may not successfully invoke the equitable tolling doctrine. <u>See</u>, <u>e.g.</u>, <u>Armstrong v. McAlpin</u>, 699 F.2d 79, 90 (2d Cir. 1983) (appellant plaintiffs' failure to timely file was inexcusable, because they should have discovered the fraud with reasonable diligence due to well publicized Securities Exchange Commission

action). The circumstances in this case do not prescribe a standard of inquiry notice, and the

standard for reasonable ignorance prior to obtaining legal counsel is met. The Plaintiffs'

ignorance of their claims during the statutory period is not an obstacle to equitable tolling, where,

as here, the wrongdoing is recognized as self-concealing. See Hendrickson Bros., Inc., 840 F.2d

at 1083 (citing Hobson, 737 F.2d at 33-34). Although Movants have been party to other

predatory lending suits within the Eastern District of New York, these claims were not

sufficiently publicized to give rise to a standard of inquiry notice. In that way, the present case is

distinct from cases such as Armstrong, where a well-publicized action by the Securities

Exchange Commission prevented the appellant plaintiff from successfully arguing in favor of

application of equitable tolling. Armstrong, 699 F.2d at 90.

Movants argue that the Notice of Foreclosure received by the Plaintiffs in March 2003

suggests that the Plaintiffs' were negligently ignorant until filing the instant Complaint on

December 22, 2004. However, this argument is unavailing, as the foreclosure was reasonably

read as an indication of an unfavorable agreement as opposed to an indication of wrongdoing

affecting the validity of the mortgage or the Defendants' liability. As recognized by Judge

Korman in Phillips, a factually similar case, "[t]here is a difference between being aware that you

got a bad deal and being aware that you were discriminated against in a systematic fashion."

Phillips, slip op. at 44. I therefore find that the statute of limitations should be equitably tolled.

   *c. Period of Tolling*

_____Where equitable tolling is properly invoked, a court must discern the point at which the

plaintiff knew or should have known of the legal claim. In matters of fraud and discrimination,

including predatory lending cases, plaintiffs are deemed to be aware of their right of action from

the point at which they met with counsel. See Jones, 2002 WL 88431; Polentsky, 97 N.Y.2d at 54. Overall, absent legal counsel, the unfavorable terms of an agreement are not necessarily sufficient to provide reasonable notice of legally cognizable harm. Phillips, slip op. at 44.

The record indicates that Plaintiffs obtained advice of counsel regarding Linda Council's bankruptcy action as early as August 2002. Were equitable tolling deemed to occur at that point, the applicable limitations periods would be measured against the period from August 2002 until the complaint was filed on December 22, 2004. In such case, the Plaintiffs' TILA claim would remain barred based on the one year statutory period set forth at 15 U.S.C § 1640. Under 15 U.S.C. § 1691 and 42 U.S.C § 3613(a)(1)(A), ECOA and FHA, respectively, would likewise be time barred due to a two year statute of limitations.[6]

Even where, as here, plaintiffs met earlier with counsel on other issues, such as bankruptcy, Judge Korman's analysis in Phillips suggests that determination of the point of tolling based on legal counsel might take account of the nature and quality of counsel. Phillips, slip op. at 43-44. In her affidavit, Kimberly Council elaborates:

> We never discussed with Mr. Scorcia, our bankruptcy lawyer, any of the facts and circumstances under which my mother and I bought the house, and he never asked us any questions about our purchase of the house. He advised us to work out a pay off plan . . . .
>
> It was not until the Fall of 2004, at our first meeting with Mr. Wagner of Brooklyn Legal Service Corp. "A", that I learned that my mother and I had been the victims of the fraud, deceptive practices and other violations of the law alleged in the complaint.

(Aff. of Pl. Kimberly Council Opp. Joint Mot. Dismiss at ¶¶ 9, 11.) Under the equitable

---

[6] I note that the Plaintiffs' GBL § 349 would remain viable under these facts, as the statute provides a three year statute of limitations.

reasoning employed by Judge Korman in <u>Phillip</u>, I find that the statute of limitations did not

begin to run until the Councils met with Mr. Wagner in the Fall of 2004. See <u>Phillips</u>, slip op. at

43 ("To hold otherwise would reward defendants for their evasiveness.") I therefore find that

Plaintiffs' federal claims survive by application of equitable tolling principles.

*2. New York State Legal Standard (GBL)*

     For the purposes of the state GBL claim, we turn to the New York state standard for

equitable tolling. The state standard for equitable tolling is substantially similar to the federal

standard. In New York, equitable tolling is applicable where: (1) the defendant has wrongfully

deceived or misled the plaintiff in order to conceal a cause of action, and (2) the plaintiff's failure

to commence the action within the statutory period is not due to lack of diligence on her part.

<u>See</u>, <u>e.g.</u>, <u>Gleason v. Spota</u>, 599 N.Y.S.2d 297 (N.Y. App. Div. 1993); <u>Ramsay v. Imogene

Bassett Hosp.</u>, 495 N.Y.S.2d 282 (N.Y. App. Div. 1985). In addition, the state doctrine requires

that "[w]here concealment without actual misrepresentation is claimed to have prevented a

plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship

. . . which gave the defendant an obligation to inform him or her of facts underlying the claim."

<u>Gleason</u>, 194 A.D.2d at 765 (citing <u>General Stencils v Chiappa</u>, 18 N.Y.2d 125 (N.Y. 1966));

<u>Jordan v Ford Motor Co.</u>, 73 A.D.2d 422, 424 (N.Y. App. Div. 1980); <u>Rockwell v Ortho Pharm.

Co.</u>, 510 F. Supp. 266, 270-271 (S.D.N.Y. 1981); <u>cf.</u> <u>Erbe v Lincoln Rochester Trust Co.</u>, 13

A.D.2d 211 (N.Y. App. Div. 1961).

     The state fiduciary relationship requirement does not appear applicable in the present

case, because the alleged wrongdoing constitutes active misrepresentation, to wit, "fraudulent

misrepresentations of material fact and fraudulent concealment of material facts," intended to

induce Plaintiffs to purchase property from BHD at an inflated price and obtain financing through MHE. (Compl. at 9.) Therefore, the equitable tolling analysis as presented, *supra*, holds for the state GBL claim as well. I find the statute of limitations was equitably tolled until the Councils' first meeting with Richard Wagner, Esq., when they discovered the alleged fraud at issue in this case. Although there is no record of when that appointment took place, other than "Fall 2004," any time after December 21, 2003 would allow for the Councils' December 22, 2004 complaint to fall within the statute of limitations for all claims. I therefore find that Plaintiffs' state cause of action is timely.

## IV.    CONCLUSION

For the reasons set forth above, the moving Defendants' motion to dismiss is DENIED on all grounds.


SO ORDERED.

Dated: August 16, 2006                    ___/s/_____
          Brooklyn, N.Y.                           Nicholas G. Garaufis
                                                   United States District Judge

21