```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

----------------------------X Docket#
M&T MORTGAGE CORPORATION,    : 02-CV-5410(MDG)(VVP)
              Plaintiff,     : 04-cv-4775
                             : 04-cv-5620
                             :
     - versus -             : U.S. Courthouse
                             : Brooklyn, New York
MILLER, et al.,              :
              Defendant      : April 3, 2008
----------------------------X
```

```
     TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
          BEFORE THE HONORABLE MARILYN D. GO
       AND THE HONORABLE VIKTOR V. POHORELSKY
            UNITED STATES MAGISTRATE JUDGE
```

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:           **Richard Wagner, Esq.**
                                   **Peter Cross, Esq.**
                                   **Joseph Sanders, Esq.**

**For the Defendants**:          **Scott Kossove, Esq.**
                                   **Melissa Lenowitz, Esq**
                                   **Steven Bagwin, Esq.**
                                   **Jack Babchik, Esq.**



**Official Transcriber**:       **Rosalie Lombardi**
                                    **L.F.**



**Transcription Service**:     **Transcription Plus II**
                                  821 Whittier Avenue
                                  New Hyde Park, N.Y.  11040
                                  (516) 358-7352

```
Proceedings recorded by electronic sound-recording,
transcript produced by transcription service
```

2

## Proceedings

1        THE CLERK:  Civil Cause for Oral Argument 02-
2   cv-5410, <u>M&T Mortgage Corporation v. Miller</u>, 04-cv-4775,
3   <u>M&T Mortgage Corporation v. White</u> and 04-cv-5620, <u>Counsel</u>
4   <u>v. Better Homes Depot</u>.

5        Magistrate Judges Go and Pohorelsky presiding.

6        MAGISTRATE JUDGE GO:  Can we have counsel state
7   their appearances for the record, so that their voices
8   can be identified.  We'll begin with the parties in he
9   Miller case, 02-cv-5410.

10        MR. WAGNER:  Yes, your Honor.  Richard Wagner,
11   Brooklyn Legal Services for Cedric and Elizabeth Miller
12   and if I may, I would like to introduce to the Court,
13   Joseph Sanders, who has just joined Brooklyn Legal
14   Services.  You will recall Max Weinstein has moved on to
15   Harvard and Mr. Sanders was admitted to the Eastern
16   District of New York and will be co-counsel with us on
17   this case.

18        MAGISTRATE JUDGE GO:  Welcome, Mr. Sanders. I
19   don't know if this is a blessing that you're joining this
20   case, at least on your part but anyway, welcome.

21        MR. SANDERS:  Yes, Joe Sanders, Brooklyn Legal
22   Services appearing on behalf of the Millers.

23        MR. CROSS:  And Peter Cross, Jacob Mettinger &
24   Finnegan, also appearing on behalf of the Millers.

25        MR. BAGWIN:  Steven Bagwin, for Eric Fessler

3

## Proceedings

1  and Better Homes Depot.

2          MS. LENOWITZ:  Melissa Lenowitz, of Steven

3  Cohn, P.C. for Nadine Malone, Madison Home Equities and

4  Mike Rindenow.

5          MR. KOSSOVE:  Scott Kossove, Labott Balkin

6  Colavita & Contini for Neal Sultzer and Ackerman, Raphan

7  & Sultzer.

8          MAGISTRATE JUDGE POHORELSKY:  Is that everybody

9  who is going to be speaking today?

10          MR. WAGNER:  That's everyone on the Miller

11  case.

12          MAGISTRATE JUDGE GO:  The Miller case.

13          MAGISTRATE JUDGE POHORELSKY:  I see.  All

14  right.  So, then in the White and Council matters,

15  plaintiff's counsel are the same; is that correct?

16          MR. WAGNER:  Yes, your Honor.

17          MAGISTRATE JUDGE POHORELSKY:  And counsel for

18  Better Homes Depot and for Madison Home Equities are also

19  the same; that is, Mr. Bagwin and Ms. Lenowitz.

20          MR. BAGWIN:  That's correct, your Honor.

21          MAGISTRATE JUDGE POHORELSKY:  Counsel for

22  Ackerman, Raphan and for Mr. Sultzer is also the same,

23  Mr. Kossove.  And finally for Mr. Weinstock?

24          MR. BABCHIK:  It's Jack Babchik, your Honor,

25  Babchik & Young for Mr. Weinstock (phonetic).

Transcription Plus II      Rosalie Lombardi

4

## Proceedings

 1       MAGISTRATE JUDGE POHORELSKY:  Thank you.  And
 2  are you on both White and Council or just one of those?
 3       MR. BABCHIK:  No, just Council.
 4       MAGISTRATE JUDGE POHORELSKY:  Just Council,
 5  okay.  All right. And the other parties, I believe -- I
 6  will say other parties, counsel for the other parties
 7  were excused to the extent that they didn't want to argue
 8  with respect to these motions.  I mean, the Court
 9  specifically permitted them not to appear.  So they are
10  excused.  So, I guess we can launch into this.
11       MAGISTRATE JUDGE GO:  Judge Pohorelsky is
12  deferring to me and I was hoping he would take the lead.
13       MAGISTRATE JUDGE POHORELSKY:  We didn't work
14  out the details ahead of time but the reason I am doing
15  that is because (a) Judge Go is senior to me on the bench
16  and (b) she's got the oldest case, so -- she's got the
17  older case, which we always defer in that order, so --
18       MAGISTRATE JUDGE GO:  Which is not a good
19  thing, I think.  I was originally going to start with the
20  motion concerning the request to admit but in keeping
21  with issues dealing with the older case, perhaps it makes
22  sense to discuss the spoliation motion first with respect
23  to the -- that the Millers have made against Ackerman,
24  Raphan.  There is a similar motion made in the other case
25  -- two cases, the White and Council case.

5

## Proceedings

1    MAGISTRATE JUDGE POHORELSKY:  Can I interrupt

2  for just a second because I do want to make sure since I

3  didn't read the Miller papers --

4    MR. WAGNER:  Your Honor, they're virtually

5  identical.

6    MAGISTRATE JUDGE POHORELSKY:  Okay.  So the

7  issues are going to be the same as far as all counsel see

8  it.

9    MR. WAGNER:  Yes, absolutely.

10    MAGISTRATE JUDGE POHORELSKY:  Good.  All right.

11 Go ahead.  I am sorry.

12    MAGISTRATE JUDGE GO:  My first question is what

13 documents does the firm have, Mr. Wagner?  Since --

14 you've referred to Mr. Fessler's deposition testimony

15 and, of course, we have Mr. Raphan's affidavit here.

16    MR. WAGNER:  Your Honor, the documents that are

17 the subject of a motion or what we've been calling the

18 Schedule B files and those were transactions, involved

19 transactions that happened primarily from 1997 and 1998,

20 maybe a handful in 1999, and involved what we allege were

21 the alterations of deeds.

22    Now Mr. Bagwin pointed out in the context of

23 the admissions motion, he said that back in 2005, Eric

24 Fessler testified, which is true, that he never kept any

25 of his closing documents or legal documents for the

6

### Proceedings

1  acquisition or the sale of properties, that all of those

2  at the end of a closing whether it was whether he was

3  buying or selling, were kept by his law firm Ackerman,

4  Raphan & Sultzer.  Now I --

5          MAGISTRATE JUDGE POHORELSKY:  Did he say that

6  Ackerman represented him in all closings?

7          MR. WAGNER:  Yes.

8          MAGISTRATE JUDGE POHORELSKY:  Both for

9  acquisition and sale?

10         MR. WAGNER:  He didn't use the word that they

11  represented in all of them but that was the implication

12  from the context.  He mentioned the firm by name,

13  Ackerman, Raphan.  He didn't say and by other lawyers.  I

14  don't know that he had a stable of law firms that

15  represented him in these transactions but --

16         MAGISTRATE JUDGE POHORELSKY:  Or that he had

17  anybody representing him in transactions.

18         MR. WAGNER:  Oh, no, no, that he did -- that's

19  no doubt.

20         MAGISTRATE JUDGE POHORELSKY:  Well there is no

21  doubt that he had law firms representing him in

22  connection with some transactions.  I mean, what evidence

23  is there and I think this goes back to what Judge Go was

24  asking, what evidence is there about what the contents of

25  Ackerman Raphan's files are?  We know because they did

Transcription Plus II        Rosalie Lombardi

7

**Proceedings**

1  produce 70 some-odd files with respect to Schedule A.

2          MR. WAGNER:  Correct.

3          MAGISTRATE JUDGE POHORELSKY:  And they produced

4  some files with respect to Schedule B, three files

5  folders as I understand it.

6          MR. WAGNER:  Correct.

7          MAGISTRATE JUDGE POHORELSKY:  So what I am

8  interested in and I don't mean to cut off Judge Go here,

9  but what I am interested in is what was in those files?

10 What did they keep in their files --

11         MR. WAGNER:  Well --

12         MAGISTRATE JUDGE POHORELSKY:  -- not -- yes, I

13 guess that's --

14         MR. WAGNER:  Your Honor, I am equally

15 interested in that.

16         MAGISTRATE JUDGE POHORELSKY:  Well you know

17 because you have them.  So what was in them?

18         MR. WAGNER:  No, no, no.  Well, I don't have

19 the 96 Schedule B files.  That's what Ackerman Raphan

20 threw away.

21         MAGISTRATE JUDGE POHORELSKY:  No, come on.

22         MAGISTRATE JUDGE GO:  Generally.

23         MAGISTRATE JUDGE POHORELSKY:  The question is

24 not that opaque.

25         MR. WAGNER:  I'm sorry.

8

### Proceedings

1          MAGISTRATE JUDGE POHORELSKY:  Look, you got a

2     bunch of files.

3          MR. WAGNER:  Yes, I'm sorry.

4          MAGISTRATE JUDGE POHORELSKY:  What were in

5     those files?

6          MR. WAGNER:  This is what would typically in

7     the file.  I didn't realize you --

8          MAGISTRATE JUDGE POHORELSKY:  Not typically,

9     what was in the files.

10          MR. WAGNER:  Acquisition deeds, sale deeds.

11    This is where acquisition deeds day for in the Schedule A

12    properties --

13          MAGISTRATE JUDGE POHORELSKY:  Okay.

14          MR. WAGNER:  -- were Better Homes was in the

15    chain of title, sale deeds, contracts of sale,

16    appraisals, uniform HUD residential loan applications,

17    assignments -- in other words, Madison Home always

18    assigned its mortgage to somebody else, usually the same

19    day and there would be a written assignment to M&T or

20    Countrywide or to whomever it assigned the mortgage.

21          The contents, the contract of sale itself would

22    indicate who the buyer's lawyer was.  So for instance,

23    many of the buyers in the files that we did obtain were

24    represented by either C. Peter David, a defendant, and

25    Mr. Weinstock who was --

9

**Proceedings**

1      MAGISTRATE JUDGE POHORELSKY:  Okay.  Now this

2  was in both the 70 some-odd Schedule A files and in the

3  Schedule B files because the transactions were somewhat

4  different in the Schedule B files.

5      MR. WAGNER:  We have a -- in the Schedule B

6  files, the only documents that were given to us were

7  contract of sale -- three contracts of sale, this is in

8  the actual production -- there were three contracts of

9  sale and two other documents, I forget exactly what they

10  were but the contracts of sale that were given, in two of

11  them, the buyers lawyers listed as C. Peter David, the --

12  I think the other two documents were mortgages that were

13  given.  Steven Weinstock was the third.  So of the three

14  files, both of the buyers lawyers are the lawyers that

15  were involved with either the Millers --

16      MAGISTRATE JUDGE POHORELSKY:  I'm really

17  interested in what the documents were.  What documents

18  were kept in those files?  That's what I -- the nature of

19  the documents that they retained, is what I am trying to

20  say.

21      MR. WAGNER:  The three files from Schedule B --

22      MAGISTRATE JUDGE POHORELSKY:  Right.

23      MR. WAGNER:  -- that were turned over to us

24  possessed only two of the many closing documents that

25  would typically be in a file.

10
### Proceedings

1          MAGISTRATE JUDGE POHORELSKY:  And what were

2   they?

3          MR. WAGNER:  Contract of sale and mortgage.

4          MAGISTRATE JUDGE POHORELSKY:  Okay.  And is

5   there any information that you obtained in discovery that

6   indicates why those documents were kept in those files,

7   in Schedule B files, in that kind of transaction as

8   opposed to the usual kinds of papers that were kept in

9   the Schedule A files.

10          MR. WAGNER:  The only response that we have

11   gotten is the Raphan affidavit which was completely

12   silent on that issue.

13          MAGISTRATE JUDGE POHORELSKY:  But you didn't

14   ask for that, did you?

15          MR. WAGNER:  We asked for it --

16          MAGISTRATE JUDGE POHORELSKY:  The letter didn't

17   ask to disclose what documents were typically kept in

18   those files.

19          MR. WAGNER:  No, but we have no reason --

20          MAGISTRATE JUDGE POHORELSKY:  Okay.

21          MR. WAGNER:  -- to believe that --

22          MAGISTRATE JUDGE POHORELSKY:  I mean, look,

23   their silence is not something that I could hold against

24   them.

25          MR. WAGNER:  I understand that.  But, Judge,

11

**Proceedings**

1  having received files from them in the past and from

2  Madison Home in the past, and knowing what a closing file

3  consists of, I can think of absolutely no rational

4  explanation why a closing file would be any different in

5  these 96 requests than they would be in the requests they

6  did turn over.

7          MAGISTRATE JUDGE POHORELSKY:  I understand.

8          MAGISTRATE JUDGE GO:  Okay.

9          MAGISTRATE JUDGE POHORELSKY:  I understand.

10          MAGISTRATE JUDGE GO:  Well let's just take a

11  step back because I just want to get clear in my mind the

12  scope of the files that Ackerman received and so you are

13  basing your motion on the fact that Fessler testified

14  that he gave everything to Ackerman.

15          MR. WAGNER:  We made a demand of Mr. Fessler.

16  Actually, your Honor, if you will recall, the very first

17  discovery demand was in November and you refer to this in

18  your former spoliation decision, it was back in November

19  of 2003.

20          MAGISTRATE JUDGE GO:  And I looked at it again.

21          MR. WAGNER:  Yes, and it sought everything from

22  January 1 through May of 2000 -- January 1, 1997, I am

23  sorry, through May of 2000, basically, the same time

24  period which the motion in limine we expanded to.

25          Your Honor will recall that it was that request

Transcription Plus II        Rosalie Lombardi

12

**Proceedings**

1  made of Better Homes Depot that triggered Mr. Genovese's

2  vigorous opposition saying it would be so burdensome and

3  there would be tens of thousands of pages.  It was --

4  that resulted in your May 2005 pared down Schedule A

5  list.

6      MAGISTRATE JUDGE GO:  Well actually there were

7  some rulings that came before that.

8      MR. WAGNER:  True.  But ultimately, the Court

9  said for purposes of production, you could have from

10  January 1, 1999 through May of 2000.  Now

11  Judge Pohorelsky in his motion in limine decision which

12  your Honor adopted --

13      MAGISTRATE JUDGE GO:  We're aware of that

14  history.

15      MR. WAGNER:  Okay.

16      MAGISTRATE JUDGE GO:  I was just trying to get

17  from you whether or not you had any other facts to

18  establish what files Ackerman received.

19      MR. WAGNER:  The time --

20      MAGISTRATE JUDGE POHORELSKY:  What do mean

21  received?  I'm not sure I--

22      MR. WAGNER:  Yes.

23      MAGISTRATE JUDGE GO:  From the closing what

24  files did Ackerman --

25      MAGISTRATE JUDGE POHORELSKY:  Oh, they actually

13

**Proceedings**

1  had.

2           MAGISTRATE JUDGE GO:  -- actually have in the -

3  -

4           MAGISTRATE JUDGE POHORELSKY:  Yes.

5           MR. WAGNER:  The time frame -- the only reason

6  I mentioned the time frame was after your Honor ruled in

7  May of 2005, in August of 2005 was when I first deposed

8  Mr. Fessler and once again, having not received very

9  much, I asked him about his files and that's when he

10 uttered the words that Mr. Bagwin quotes in his

11 opposition papers, that all of the deeds and all of the

12 closing documents, I think that's the quote, all of the

13 deeds and all of the other closing documents --

14          MAGISTRATE JUDGE GO:  No, I -- okay.

15          MR. WAGNER:  -- were kept with Ackerman, Raphan

16 & Sultzer.

17          MAGISTRATE JUDGE GO:  No, okay, I understand

18 that.  Let me just pose the question to Mr. Kossove since

19 I know inexplicably, both sides did not want to have a

20 deposition which I quite surprised me.  But anyway, I

21 didn't see any statement in any of your submissions

22 contesting the fact that Fessler deposited all of the

23 closing documents with Ackerman; is that correct?

24          MR. KOSSOVE:  It's actually been and Mr. Wagner

25 knows this because it's come upon issues years before,

14

**Proceedings**

1  Mr. Fessler both -- I mean, Mr. Sultzer testified at his

2  deposition that he would walk away from a closing.  He

3  would give back the client file to both Madison and

4  Better Homes and he would retain copies of certain

5  documents.

6           The same documents that were in the Schedule B

7  are usually in the Schedule A and Mr. Wagner should know

8  that.  I just want to clarify one thing, however.

9  Mr. Wagner stood up here in court with respect to those

10  Schedule Bs and specifically said I am only looking for

11  three documents from those files from you, Mr. Kossove.

12  I am looking for the HUD one, the contracts of sale, and

13  the deed.  So he specifically directed us to say whatever

14  you do have, I want you to produce those three documents

15  and that's what we did.

16           MAGISTRATE JUDGE POHORELSKY:  So you did not

17  produce the entire file for those three properties on

18  Schedule B that you had actually did have the files.

19           MR. KOSSOVE:  There are extraneous things that

20  he sees in the Schedule As that we didn't produce in the

21  Schedule Bs that are Mr. Sultzer's fax information that

22  he received from Better Homes Depot with respect to the

23  potential sale, time appointments that he had to appear

24  at the closing, notes.  But in what was actually

25  produced, there wasn't just mortgage documents, there was

15

**Proceedings**

1   the HUD-1 and there was the contract of sale in those

2   Schedule B.

3           MAGISTRATE JUDGE POHORELSKY:  Okay.  I am --

4   while I think you may have answered my question, let me

5   pose it again.  There were documents in the three files

6   that you did find for properties listed on Schedule B

7   that were not turned over to Mr. Wagner.

8           MR. KOSSOVE:  That's correct.

9           MAGISTRATE JUDGE POHORELSKY:  Okay.  So we're

10  not to draw any inference from the fact that the Schedule

11  B files that were -- or the Schedule B papers that were

12  produced to Mr. Wagner -- let me put it another way.  At

13  this point, we can draw no inference that Schedule B

14  files weren't as complete as Schedule A files.

15          MR. KOSSOVE:  No.  And, in fact, one other

16  point of clarification, I am not sure if plaintiff's

17  counsel is getting the Schedule As mixed up in terms of

18  what was produced by my clients early on and what was

19  produced by Madison.  However, I know for a fact that in

20  the documents that were produced with respect to Schedule

21  A, there were HUD-1s, there were contracts of sales, but

22  there was not always deeds in those.  Mr. Sultzer

23  testified --

24          MAGISTRATE JUDGE POHORELSKY:  Not always?

25          MR. KOSSOVE:  Deeds.

16

**Proceedings**

1           MAGISTRATE JUDGE POHORELSKY:  Of any kind,
2  either deeds of sale or deeds of acquisition.

3           MR. KOSSOVE:  Well on some there were but no on
4  all of them and, in fact, Mr. Sultzer testified and this
5  is a position we have consistently maintained, he did not
6  always represent Better Homes Depot.  So a statement
7  cannot be made that all of these files would have been in
8  Ackerman, Raphan's possession because it is not the case
9  that on every single one of Better Homes' purchases of
10 these properties, Ackerman, Raphan & Sultzer were
11 counsel.

12          MAGISTRATE JUDGE POHORELSKY:  Particular since,
13 it seems to me, that some of them -- most of those or
14 many of them are foreclosure sales, are they not?

15          MR. KOSSOVE:  Yes.

16          MAGISTRATE JUDGE POHORELSKY:  I mean, at a
17 foreclosure sale you go and you bid, supposedly at the --
18 on the courthouse steps.  I mean, look, Judge Go is much
19 more familiar with real estate practice than I am.

20          MAGISTRATE JUDGE GO:  I've done two foreclosure
21 sales --

22          MAGISTRATE JUDGE POHORELSKY:  Okay.

23          MAGISTRATE JUDGE GO:  -- as an assistant US
24 attorney.

25          MAGISTRATE JUDGE POHORELSKY:  Okay.  So then --

17

**Proceedings**

1          MAGISTRATE JUDGE GO:  They were not happy

2    experiences.

3          MAGISTRATE JUDGE POHORELSKY:  Anyway, but in

4    other words, it's not like the normal sort of closing

5    where you show up and there's a whole bunch of documents

6    exchanged.  Somebody just makes a bid and then if there

7    is anybody else that competes, then they should -- but

8    usually there's not even a competing bid; right?

9          MR. KOSSOVE:  For whatever was the various ways

10   that Better Homes Depot acquired these properties,

11   Ackerman, Raphan was not not always serving as an

12   attorney on these acquisitions.

13         MAGISTRATE JUDGE POHORELSKY:  And one other

14   question and then I will defer, did -- I didn't know that

15   Sultzer had given a deposition.  Maybe he gave it in the

16   Miller case --

17         MR. KOSSOVE:  In the Miller case.

18         MAGISTRATE JUDGE POHORELSKY:  -- but not in our

19   case.

20         MR. KOSSOVE:  Yes.

21         MAGISTRATE JUDGE POHORELSKY:  Okay.

22         MR. KOSSOVE:  Yes.

23         MAGISTRATE JUDGE POHORELSKY:  I mean, not in my

24   case.  I'm sorry.  Go ahead.

25         MR. WAGNER:  Your Honor, I can answer --

18

**Proceedings**

1      MAGISTRATE JUDGE GO:  I'll give you a chance to

2 respond because --

3      MR. WAGNER:  Thank you.

4      MAGISTRATE JUDGE GO:  -- you know, it was a

5 concern which I expressed last year before these motions

6 were filed, that you have to lay the foundation for a

7 spoliation motion and establish what Ackerman had in the

8 first place.

9      MR. WAGNER:  What --

10      MAGISTRATE JUDGE GO:  That's the first step in

11 any spoliation motion, that it had certain documents and

12 next, of course, that it had a duty to preserve those

13 documents which we'll get to next.

14      MR. WAGNER:  Just because I like to avoid being

15 caught in a Catch 22 situation, first I would like to

16 point out that the fact that I volunteered, voluntarily

17 had asked for the complete files of the Schedule B 96

18 transactions, and then on October 18, before

19 Judge Pohorelsky, we had actually moved to compel

20 production the previous November.  Judge Pohorelsky may -

21 - we had made the demand in September '06, a motion to

22 compel on November 25, 2006.  Judge Pohorelsky said on

23 the record on October 18, 2007, that he had overlooked

24 that motion.  And he asked Mr. Kossove, who had had a

25 pending protective order, which had suggested that there

19

## Proceedings

 1  were files and it was based on burdensomeness,

 2  Judge Pohorelsky that record will reflect, said -- asked

 3  about the burdensomeness issue and I volunteered at that

 4  time, still believing that they would have all of those

 5  files, why would lawyers throw away client files.

 6          And that based on Fessler's prior testimony,

 7  they would be the logical party to ask because they had

 8  represented them, certainly on many if not all of their

 9  acquisitions and as far as we can tell, all of their

10  sales.

11          MAGISTRATE JUDGE POHORELSKY:  You know,

12  Mr. Wagner, you're giving me all of these facts.  I just

13  don't know where you're going with this.

14          MR. WAGNER:  Okay. Well I was going to get

15  there in a minute, your Honor.

16          MAGISTRATE JUDGE POHORELSKY:  Can you maybe

17  make your point and then you can fill in the facts later

18  because I am having troubling --

19          MR. WAGNER:  That's why --

20          MAGISTRATE JUDGE POHORELSKY:  -- this whole

21  train of argument.  I mean, if the point you're -- the

22  only reason I am pursuing this is and the reason

23  Judge G is pursuing this is we're asked to make a finding

24  first that they destroyed documents that you need; right?

25  We don't know what documents -- we have to know what

20

**Proceedings**

1   documents they actually had before we can know whether

2   they destroyed documents that you need.

3         So the opening question is how do we know what

4   they had?  Now I don't even know what's -- you were

5   willing to accept only three kinds of documents and then

6   in answer to my question, you are saying it surprises me

7   that they didn't have more in those files.

8         MR. WAGNER:  No, I am not saying that,

9   your Honor.

10        MAGISTRATE JUDGE POHORELSKY:  That's the

11  argument I heard.

12        MAGISTRATE JUDGE GO:  Yes.

13        MR. WAGNER:  Okay.  The argument I was making

14  is that after  little arm twisting, I said I would accept

15  that.  We had asked for the entire files, but that we

16  would accept three species of documents.

17        MAGISTRATE JUDGE POHORELSKY:  No, no, no, but

18  in response to my argument a little earlier, I thought

19  you were saying well, the Schedule B documents we got

20  were only three documents.  Lo and -- you know, and in

21  Schedule A, we got all of these documents.  In Schedule B

22  we only about three.

23        MR. WAGNER:  No, that's --

24        MAGISTRATE JUDGE POHORELSKY:  That's what you

25  were telling us.

21

**Proceedings**

1      MR. WAGNER:  I'm sorry, I may have not been

2  clear about what I intended.  They only gave us a handful

3  of documents from only three of 96, I think it was,

4  requested files.  In terms of why we believe and are

5  convinced that they had those 96 files and that they were

6  Council, was that when we prepared that Schedule B list,

7  we had the ACRIS files which were the sale part of the

8  transaction.

9      MAGISTRATE JUDGE POHORELSKY:  I understand.  I

10 understand all of that.  Maybe I am not being quite as

11 precise with my questions as I ought to be.  Ultimately,

12 the entire exercise here is designed to find information

13 about so-called altered deeds; isn't that right?

14     MR. WAGNER:  Yes.

15     MAGISTRATE JUDGE POHORELSKY:  Okay.  In other

16 words, that's the point of both motions.

17     MR. WAGNER:  Well, correct, yes, absolutely.

18     MAGISTRATE JUDGE POHORELSKY:  Okay.  So the

19 question then for me is with -- if that's your goal --

20     MR. WAGNER:  Right.

21     MAGISTRATE JUDGE POHORELSKY:  -- what is it in

22 the Ackerman, Raphan files that you don't have that you

23 think would help you establish the altered deeds issued?

24     MR. WAGNER:  The unaltered deed.

25     MAGISTRATE JUDGE POHORELSKY:  And why do you

22

## Proceedings

1    think those were ever in the possession of Ackerman,

2    Raphan?

3              MR. WAGNER:  Because of Mr. Fessler -- two

4    reasons; because of Mr. Fessler's testimony that

5    Ackerman, Raphan represented --

6              MAGISTRATE JUDGE POHORELSKY:  Okay.  I got

7    that.  Number one.

8              MR. WAGNER:  -- them in acquisitions --

9              MAGISTRATE JUDGE POHORELSKY:  You've already

10   said that.

11             MR. WAGNER:  Okay.

12             MAGISTRATE JUDGE POHORELSKY:  Yes.

13             MR. WAGNER:  And we had no reason to dispute

14   that.

15             MAGISTRATE JUDGE POHORELSKY:  Okay.

16             MR. WAGNER:  And because of Ackerman, Raphan's

17   representation of them in every subsequent sale of those

18   properties.

19             MAGISTRATE JUDGE POHORELSKY:  But why wold they

20   keep the acquisition deeds at all?  Why?  Why is that

21   something you think would be in the files at all?

22             MR. WAGNER:  Because a real estate lawyer,

23   particularly under New York State law, under RPAPL

24   Article 15, which is the action to acquire title, defects

25   in title, technical defects, liens, other claimants, all

23

**Proceedings**

1   kinds of clouds upon title can arise and there is a ten

2   year statute of limitations.  So any lawyer who is in the

3   business of representing a buyer and particularly one who

4   is representing a buyer and a seller would want the

5   documents to establish that they had this--

6           MAGISTRATE JUDGE POHORELSKY:  Okay, so they

7   should have.

8           MR. WAGNER:  They should have.

9           MAGISTRATE JUDGE POHORELSKY:  They should have.

10  But you don't have any specific evidence that they did.

11  That's the question.  Because they can't have destroyed

12  something that they didn't -- I mean, if they didn't keep

13  it to begin with, even if they should have, we can't make

14  a finding that they destroyed it.

15          MR. WAGNER:  Yes, your Honor.  So in other

16  words, let me see if I understand you correctly.  If I

17  have a lot of documents and I actually have 96

18  acquisition deeds, and then I destroy those 96

19  acquisition deeds where my buyer client has already

20  testified that I represented him in many of those cases.

21  And if it standard operating procedure for a biased

22  lawyer, if I --

23          MAGISTRATE JUDGE POHORELSKY:  Look, you're

24  asking me a hypothetical.

25          MR. WAGNER:  -- destroy them, I get the benefit

24

**Proceedings**

1  of the doubt --

2          MAGISTRATE JUDGE GO:  No, no, let's stop.

3          MAGISTRATE JUDGE POHORELSKY:  Stop, stop.

4          MAGISTRATE JUDGE GO:  Stop.

5          MAGISTRATE JUDGE POHORELSKY:  I'm not here to

6  answer your questions, Mr. Wagner.

7          MAGISTRATE JUDGE GO:  Wait.  Let me --

8          MAGISTRATE JUDGE POHORELSKY:  You know, I am

9  asking you --

10         MR. WAGNER:  I didn't ask a question.

11         MAGISTRATE JUDGE POHORELSKY:  I asked you a

12  question and I have to make a specific factual finding.

13         MR. WAGNER:  Okay.

14         MAGISTRATE JUDGE POHORELSKY:  And I am asking

15  you what in the record permits me to make the finding.

16         MR. WAGNER:  The point --

17         MAGISTRATE JUDGE POHORELSKY:  The only thing

18  that you have been able to identify so far is that they

19  should have kept them, not that they did, they should

20  haven't because they should have and they've destroyed

21  documents, then I should make the finding that they had

22  them and among the documents they destroyed, were those

23  documents. Okay?  That's your argument.

24         MR. WAGNER:  The preponderance -- if the

25  standard is, right, that the preponderance of evidence is

25

**Proceedings**

1 that Mr. Fessler's statement that his lawyer's had the

2 files --

3          MAGISTRATE JUDGE POHORELSKY:  Oh, you put a lot

4 of stock in Mr. Fessler's statements, I take it.

5          MR. WAGNER:  No, no.

6          MAGISTRATE JUDGE POHORELSKY:  Anything he says

7 you believe, I take it.

8          MR. WAGNER:  No, your Honor --

9          MAGISTRATE JUDGE POHORELSKY:  I don't think

10 that's -- that's not what I have been given to believe.

11          MR. WAGNER:  But the statements -- remember,

12 the same Schedule B files were demanded of Mr. Fessler,

13 as well, right?  Those were demanded of him and his

14 answer there was again he didn't have them, Ackerman,

15 Raphan had them.

16          MAGISTRATE JUDGE POHORELSKY:  Okay.

17          MR. WAGNER:  That's int he context of the

18 motion to admit.

19          MAGISTRATE JUDGE POHORELSKY:  Understood.

20          MAGISTRATE JUDGE GO:  Now, Mr. Wagner,

21 Mr. Kossove said that Sultzer testified that Ackerman did

22 not represent Fessler for most of these acquisitions and

23 foreclosure stales.

24          MR. WAGNER:  Well, I am not --

25          MAGISTRATE JUDGE GO:  I don't know if, you know

26

**Proceedings**

1  --

2           MR. WAGNER:  If Mr. Kossove has personal k

3  knowledge --

4           MAGISTRATE JUDGE GO:  No, no, no.

5           MR. WAGNER:  -- and would like to testify.

6           MAGISTRATE JUDGE GO:  No, he said Sultzer

7  testified.

8           MR. WAGNER:  No, I don't believe that

9  Mr. Sultzer testified to that.  I believe he testified

10  that he did represent him in an indeterminant number of

11  his acquisitions.  He couldn't put a particular number on

12  the ones that he did.

13           I will tell you that all of the deeds we have

14  from the Schedule A, not from the sale deeds, but the

15  acquisition deeds, that Mr. Ackerman and the Ackerman,

16  Raphan firm represented him in his acquisition in those

17  case and I think a trior of fact could reasonably infer

18  indeed that the preponderance of the evidence between

19  Fessler's testimony which I don't necessarily find

20  credible but was willing to take at face value between

21  Sultzer's own testimony, while he couldn't put a number

22  on how many, whether it was 20 or 60 or 90, that he did

23  represent Fessler in acquisition properties and you add

24  to that the fact that of the deeds that we do have

25  related to Schedule A acquisitions, where his deeds were

27

**Proceedings**

1  recorded and there was no suggestion of real property

2  transfer tax shenanigans, that Ackerman, Raphan was the

3  lawyer in those cases.  Some things are proven

4  circumstantially,

5  your Honor.

6           MAGISTRATE JUDGE GO:  Yes.

7           MAGISTRATE JUDGE POHORELSKY:  Okay.

8           MR. WAGNER:  And I think that the

9  circumstantial evidence here is overwhelming that

10 Ackerman, Raphan had many, if not all, of those 96 deeds.

11          MAGISTRATE JUDGE POHORELSKY:  Okay.  So in the

12 Schedule A documents that you did get --

13          MR. WAGNER:  Yes.

14          MAGISTRATE JUDGE POHORELSKY:  -- you have

15 acquisition deeds.

16          MR. WAGNER:  There are acquisition deeds; yes.

17 There are -- I didn't count them up.

18          MAGISTRATE JUDGE POHORELSKY:  Okay.  But there

19 are -- in some cases there are --

20          MR. WAGNER:  Yes.

21          MAGISTRATE JUDGE POHORELSKY:  -- and in some

22 cases there are not.

23          MR. WAGNER:  Absolutely acquisition deeds and

24 that they were Ackerman, Raphan deeds.

25          MAGISTRATE JUDGE POHORELSKY:  Just so that the

28

### Proceedings

1  record doesn't get too muddled up, please allow me to

2  finish talking and then -- so that we don't cause our

3  poor court reporter who has to transcribe this to have

4  apoplexy.

5          Let me just finish my thought.  There are -- in

6  those files, there are acquisition deeds.  Are they

7  originals?

8          MR. WAGNER:  Well they wouldn't have -- they

9  were copies.

10          MAGISTRATE JUDGE GO:  No, well the original

11  would have been returned --

12          MAGISTRATE JUDGE POHORELSKY:  Okay.

13          MAGISTRATE JUDGE GO:  -- to whoever --

14          MR. WAGNER:  Right.

15          MAGISTRATE JUDGE GO:  -- was listed as the

16  seller or the seller's attorney.

17          MR. WAGNER:  Exactly.  These were discovery

18  copies.

19          MAGISTRATE JUDGE GO:  They were copies of --

20          MR. WAGNER:  Yes.

21          MAGISTRATE JUDGE GO:  -- what was in the file.

22          MR. WAGNER:  Right.

23          MAGISTRATE JUDGE GO:  Okay.  That's fair

24  enough.

25          MR. WAGNER:  Right, but it would have been --

29

**Proceedings**

1  because Mr. Fessler did acquire inventory overwhelmingly,

2  you know, 75 percent, 80 percent of his inventory was

3  acquired by buying at foreclosure sales, and that

4  produces what's called a referee's deed.

5      MAGISTRATE JUDGE POHORELSKY:  Right.

6      MR. WAGNER:  And the referee's deed has a date,

7  it has the name of the referee, it has the underlying

8  index number and stuff about the foreclosure action and

9  the price.

10      MAGISTRATE JUDGE POHORELSKY:  Can I interrupt

11  you?  And in the referee's deeds, are there referee's

12  deeds among the Schedule A properties?

13      MR. WAGNER:  Yes.

14      MAGISTRATE JUDGE POHORELSKY:  Okay.

15      MR. WAGNER:  And, your Honor, in terms of the

16  process, I just want to --

17      MAGISTRATE JUDGE GO:  Excuse me.

18      MR. WAGNER:  Yes.

19      MAGISTRATE JUDGE GO:  Just to clarify that

20  point, are there referee's deeds in which the property is

21  transferred to Better Homes Depot or Madison or one of

22  the defendants or third party defendants in this case or

23  are --

24      MR. WAGNER:  Oh, the referee --

25      MAGISTRATE JUDGE GO:  -- they to the ultimate

30

**Proceedings**

1  purchasers?

2          MR. WAGNER:  No, the referee's deeds were never

3  to the -- well, the referee's deeds in the Schedule A

4  list were necessarily all to Better Homes Depot because

5  that way Better Homes would record its title and execute

6  a new deed to the new buyer.  That's the proper way to do

7  it.  These 96 Schedule B files, what we have is a white

8  out of Better Homes name on the deed, so that it looks

9  like the grantee from the referee instead of being Better

10 Homes Depot is in fact the ultimate buyer.  So it looks

11 as if the ultimate buyer bought from the referee.

12          But you have all of these anomalies.  For

13 instance, very often on the Schedule B files -- and by

14 the way, we listed this information on the Schedule B,

15 you would have the referee's deed say dated January 5 --

16          MAGISTRATE JUDGE GO:  Yes, that was

17 (inaudible).

18          MR. WAGNER:  -- but the person didn't have the

19 closing until March.

20          MAGISTRATE JUDGE POHORELSKY:  Well, I am not

21 sure I follow what it is you think it going to be in the

22 Ackerman, Raphan file.  Are you going to have the whited

23 out version?

24          MR. WAGNER:  No, we already have -- the whited

25 version is the recorded version.

31

**Proceedings**

1    MAGISTRATE JUDGE POHORELSKY:  Okay.  But why

2  would there be anything else than that in Ackerman's

3  files?

4    MR. WAGNER:  Ackerman' files, if he bought, if

5  he kept the file in tact, the way a referee's foreclosure

6  sale works is that there's a bidding process as

7  your Honor pointed out, and the winning bidder only puts

8  down 10 percent.  Then 30 days later or whenever, there's

9  an actual closing at which the winning bidder pays the

10  referee the balance.

11    When the winning bidder hands the referee the

12  check, the referee sign the deed called the referee's

13  deed that lists the name of the winning bidder.  That's -

14  - it's that comparison.  It's -- your Honor, it's like

15  having a before and after photograph.

16    MAGISTRATE JUDGE POHORELSKY:  But I thought

17  that deed, you're saying was then -- that deed that was

18  transferred by the referee was then whited out.

19    MR. WAGNER:  Well, we don't -- physically, if

20  they actually took that original deed from the referee

21  and whited it out and didn't keep a copy of that, I

22  suppose that's a hypothetical possibility but that --

23    MAGISTRATE JUDGE POHORELSKY:  But what else

24  could be done?

25    MR. WAGNER:  Very simple.

32

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  I mean you have

2   to have an original deed, right, that gets recorded.

3   They're not going to take a photocopy; right?

4          MR. WAGNER:  No, you don't have to have an

5   absolute original deed.  They -- you can original

6   signatures.

7          MAGISTRATE JUDGE GO:  Yes, okay.  Right.

8          MR. WAGNER:  So that they could have made a

9   xerox copy of their original deed for any number of

10  reasons, one they might have had at some point a reason

11  to establish whether for tax purposes or whatever, say if

12  Fessler wrote a check to the referee for $120,000 on the

13  closing date to pay his balance, later on for tax

14  purposes, he might want to establish that his profit on

15  the transaction, right, if he declared that as a Better

16  Homes transaction.  And that's what's interesting.  On

17  all the HUD-1s and all the contracts of sale for these

18  altered deeds --

19          MAGISTRATE JUDGE POHORELSKY:  You --

20          MR. WAGNER:  -- Better Homes Depot is listed as

21  the seller.

22          MAGISTRATE JUDGE POHORELSKY:  You've lost me

23  already, sorry.  I don't know -- I am just still trying

24  to figure out the documents because I don't understand --

25          MR. WAGNER:  On the --

33

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  -- the trail of

2    documents and what you think you're going to find --

3          MR. WAGNER:  On all --

4          MAGISTRATE JUDGE POHORELSKY:  -- in the

5    Ackerman, Raphan files --

6          MR. WAGNER:  On all --

7          MAGISTRATE JUDGE POHORELSKY:  -- that you think

8    would show what it is that you want to show.  I am still

9    having trouble with that.

10          MR. WAGNER:  To show consistency that because

11    all of the Schedule B files, those are the altered deed

12    files, there was a discrepancy.  The discrepancy would be

13    the grantor on the deeds should have been Better Homes

14    Depot, instead it remained the referee.  However, they

15    didn't conform their other documents.  So for instance,

16    the contract of sale and the HUD-1 signed at the closing

17    to the ultimate buyer where Ackerman, Raphan on that HUD-

18    1 will be listed as the settlement agent and the sellers

19    name is typed at the top of the HUD-1, it says seller,

20    Better Homes Depot.

21          So Better Homes Depot is acting as the seller.

22    The checks are being written to Better Homes Depot out of

23    the loan proceeds.  They're not being written to a

24    referee out of the loan proceeds.

25          MAGISTRATE JUDGE POHORELSKY:  So you need all

34

## Proceedings

1   of the other documents in the Schedule B files.

2          MR. WAGNER:  We would have liked it but we felt

3   that your Honor was pressuring us to take fewer than all

4   of the documents, so we said -- you said what documents

5   would you take?  And I said we'll take the original deed,

6   we'll take the contract of sale, a couple of other

7   documents.  I forget what I said.  It will be in the

8   transcript of October 18.

9          MAGISTRATE JUDGE POHORELSKY:  Okay.

10         MR. WAGNER:  But remember, we made this request

11  in '06 of Ackerman, Raphan & Sultzer and it wasn't until

12  October -- they put in a protective order, your Honor

13  didn't rule for whatever reason and then on October 18,

14  that protective order was purportedly made moot when

15  Ms. Kossove announced 13 months after we made the demand

16  and --

17         MAGISTRATE JUDGE POHORELSKY:  I understand.

18         MR. WAGNER:  Okay.

19         MAGISTRATE JUDGE POHORELSKY:  I do -- I am

20  aware of the history.

21         MAGISTRATE JUDGE GO:  Now, tell me the

22  significance of the documents you're seeking or that you

23  claim were destroyed by Ackerman.

24         MR. WAGNER:  Okay.

25         MAGISTRATE JUDGE GO:  You eluded to avoiding

**Proceedings**

1  the transfer tax.

2          MR. WAGNER:  Right.

3          MAGISTRATE JUDGE GO:  Is that really what

4  you're trying to --

5          MR. WAGNER:  No, your Honor.  It's for a

6  variety of purposes.  What we wanted remember, was just

7  the Schedule B files.  We want -- well, we wanted the

8  Schedule B addresses, those transactions.  But we wanted

9  both the acquisition files and the sale file.  On the

10  acquisition file, the thing that we -- that was most

11  helpful to us would be that in the ordinary course of

12  business, they would have had the referee's deed to

13  Better Homes Depot as part of that file.  They paid

14  Better Homes Depot money to the referee.  They should

15  have a deed in the name granting title to Better Homes.

16          In the same files which we belatedly asked

17  Madison for and Judge Pohorelsky turned us down on that

18  because we thought it would at least mitigate some of our

19  damages, we wanted -- the reason that the contract of

20  sale is very important because it shows (a) that Better

21  Homes Depot was the seller. The HUD-1 shows that Better

22  Homes remained the seller up until the very last day.  It

23  shows that Gail Zucker and Paragon Abstract were involved

24  in every one of those transactions as the title abstract

25  company and as the closer. It will -- every contract of

36

**Proceedings**

1   sale, say there were 96 contracts of sale, we believe

2   that Mr. Weinstock may have represented the buyer at

3   anywhere from 20 to 30 of those acquisitions, and the

4   same for C. Peter David, who were the Millers lawyer and

5   the Council's lawyer and Leo White's lawyer.

6          So this implicates Paragon, Zucker, Weinstock,

7   C. Peter David, Ackerman, Raphan, basically the entire

8   ensemble, cast of defendants sat around a table and

9   watched somebody commit the felony of forgery by whiting

10  out an instrument known as a deed.  That is a felony

11  forgery under New York's Penal Law.

12         Under 4 --

13         MAGISTRATE JUDGE POHORELSKY:  It seems like

14  it's an awful lot of assumptions you're making --

15         MR. WAGNER:  Well, under 4 --

16         MAGISTRATE JUDGE POHORELSKY:  -- that all of

17  those things actually went on in the presence of

18  everybody else.  In any event, I think I understand what

19  you're saying.

20         MR. WAGNER:  Under 404(b), your Honor, I think,

21  you know, as a trial lawyer or whatever, any trial lawyer

22  will tell you, any trial lawyer, that if my description

23  of the events is complicated or the transactions are

24  esoteric by nature, jurors often struggle with that.

25         What I have been deprived of is the before and

37

**Proceedings**

1  after picture opportunity.  The chance to ask --

2          MAGISTRATE JUDGE POHORELSKY:  Well you have

3  some of it.

4          MR. WAGNER:  I have a handful.

5          MAGISTRATE JUDGE POHORELSKY:  And it strikes me

6  ultimately, that this is all collateral because your

7  clients were never harmed by a bad deed.  They didn't --

8  let me just make sure because Mr. -- this is persuasive

9  to me.  Mr. Kossove makes the point that you're not

10  complaining that your clients got a bad deed.  They

11  weren't defrauded because they got a bad deed.  There's

12  not even an allegation that there was an altered deed

13  with your client.  That's number one.

14          Number two, you didn't describe the conspiracy

15  as a conspiracy or a pattern and practice, to deprive

16  people of a -- or to use altered deeds, right?  You

17  didn't do that.  I read the complaint.  So what you

18  really want this information for is to show other bad

19  acts, to cast doubt on the credibility of these people.

20  That's what you're saying.

21          MR. WAGNER:  No, your Honor.  That's not --

22          MAGISTRATE JUDGE POHORELSKY:  Because that's

23  not the pattern and practice of fraud that you pleaded in

24  your case.

25          MR. WAGNER:  That is absolutely not what I am

Transcription Plus II      Rosalie Lombardi

38

**Proceedings**

1  saying and I did not -- I said something very different

2  in both the moving papers and the reply papers.

3         MAGISTRATE JUDGE POHORELSKY:  Okay, so tell me.

4         MR. WAGNER:  I said under 404(b) of the Federal

5  Rules of Evidence, this kind of uncharged act

6  particularly what's happening in a transaction that is in

7  all respects the sale of residential real estate but this

8  kind of uncharged act is admissible to prove intent, to

9  prove the absence of mistake or inadvertence, to prove

10 joint participation, that's what 404(b) says.

11        MAGISTRATE JUDGE POHORELSKY:  Look, it's intent

12 to do what?

13        MR. WAGNER:  Pardon?

14        MAGISTRATE JUDGE POHORELSKY:  The intent here

15 was to commit fraud by making misrepresentations as to

16 the value of the property.

17        MR. WAGNER:  The --

18        MAGISTRATE JUDGE POHORELSKY:  Not as to an

19 altered deed.

20        MR. WAGNER:  But --

21        MAGISTRATE JUDGE POHORELSKY:  It was as to the

22 value of the property.  What's what your clients

23 suffered.  They obtained a property that was not what

24 they thought it was.  That's what you pleaded; right?

25        MR. WAGNER:  The --

39

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  So these other

2    bad acts are not -- they don't go to the intent to prove

3    fraud as to this particular fraud.

4          MR. WAGNER:  Your Honor?

5          MAGISTRATE JUDGE POHORELSKY:  They just don't.

6    They show that these guys were crooked.  That's what you

7    want to show.

8          MR. WAGNER:  Your Honor?

9          MAGISTRATE JUDGE POHORELSKY:  They're crooked.

10         MR. WAGNER:  Your Honor, when we first made

11   this demand, indeed when we first the original demand

12   back in 2003, we were operating on the assumption that

13   there would be --

14         MAGISTRATE JUDGE POHORELSKY:  When you made

15   what original demand?

16         MR. WAGNER:  In 2003, our first discovery

17   demand which Judge Go refers to in her spoliation

18   decision and indeed, even when Polinestsky (phonetic)

19   made their discovery demand which your Honor refers to in

20   the spoliation decision adopting Judge Go's decision, you

21   both couldn't have been more emphatic on the issue of a

22   litigation hold, on being on notice.  Now what's so

23   interesting about --

24         MAGISTRATE JUDGE POHORELSKY:  Forget that.

25   Forget that.  I am not talking about litigation hold,

40

**Proceedings**

1  Mr. Wager.  I am talking about the significance of this

2  issue.  You're talking about altered deeds.  You want to

3  cast bad light on the defendants and all of the

4  defendants who may have participated in altering deeds,

5  right?

6              MR. WAGNER:  I want to establish their intent.

7              MAGISTRATE JUDGE POHORELSKY:  You want to show

8  that they participated in that bad act, so that when they

9  come to analyze whether the bad acts that you claim your

10  client suffered from because they didn't suffer from an

11  altered deed.  There's no -- you've already exceeded --

12  you have already exceeded that.

13              MR. WAGNER:  Correct.  The general fraudulent

14  intent that I am trying to prove under 404(b) --

15              MAGISTRATE JUDGE POHORELSKY:  So what you're

16  saying is --

17              MR. WAGNER:  Right.

18              MAGISTRATE JUDGE POHORELSKY:  -- is they

19  committed other frauds, they committed another fraud, so

20  they must have committed this fraud.

21              MR. WAGNER:  No, that's not --

22              MAGISTRATE JUDGE POHORELSKY:  That's exactly

23  what you are saying.

24              MR. WAGNER:  No, your Honor.  Well once again,

25  that's convenient to put words in my mouth that I am

41

**Proceedings**

1  expressly not saying.

2         MAGISTRATE JUDGE POHORELSKY:  Okay.  All right.

3         MR. WAGNER:  I can prove -- you have to prove

4  fraudulent intent in order to establish fraud.  And there

5  are plenty of cases in which uncharged bad acts that were

6  similar in nature -- you know, the species of fraud, we

7  lied about the fair market value, we lied about the

8  repairs, we lied about the legality of the rental unit,

9  we lied about whether or not you had work permits.  We

10 lied about all of those things.

11        Now the fact is, if they lied about a fifth

12 thing or a sixth thing, what's unique about that is that

13 altering a deed, unlike the circumstantial proving of

14 intent, right, gee there were no work permits, well

15 that's circumstantially suggests that you had a

16 fraudulent intent when you did the repairs, this is

17 direct evidence of fraud.  I am telling you I am going to

18 give you good title and, in fact, I am giving you a

19 defective altered deed.

20        MAGISTRATE JUDGE POHORELSKY:  Yes, but it's not

21 the fraud that harmed your client.

22        MR. WAGNER:  All right.  And I think that --

23        MAGISTRATE JUDGE POHORELSKY:  That's not the

24 fraud that harmed your client.

25        MR. WAGNER:  If they want to make a motion in

42

**Proceedings**

1    limine --

2            MAGISTRATE JUDGE POHORELSKY:  All right.  I

3    understand the argument.  I understand the argument.

4            MR. WAGNER:  Your Honor?

5            MAGISTRATE JUDGE POHORELSKY:  I mean, I don't

6    know, did you have more questions?

7            MAGISTRATE JUDGE GO:  Yes, I think that's it.

8            MAGISTRATE JUDGE POHORELSKY:  I might have some

9    more.  Just a second.  Oh, yes.  I am still trying to

10   remember the genesis of Schedule B.  Schedule B first

11   popped up in or around late 2006; am I right about that?

12   Is that the first time Schedule B was generated?

13           MR. WAGNER:  We -- yes, it was very time

14   consuming.  We worked on it over the summer.

15           MAGISTRATE JUDGE POHORELSKY:  Just yes or no.

16           MR. WAGNER:  September --

17           MAGISTRATE JUDGE POHORELSKY:  Just yes or no.

18           MR. WAGNER:  Yes, September of '06.

19           MAGISTRATE JUDGE POHORELSKY:  I don't need to

20   know what you did.

21           MR. WAGNER:  Yes, Judge.

22           MAGISTRATE JUDGE POHORELSKY:  Mr. Wagner, you

23   know --

24           MR. WAGNER:  It's in there.  It's in the

25   exhibit, September 19, 2006.

43

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  Let me interrupt

2     you for just a second.  It would really help me if you

3     would answer my questions without giving me a treatise --

4          MR. WAGNER:  Yes.

5          MAGISTRATE JUDGE POHORELSKY:  -- on everything

6     that went behind this.  We've been here almost an hour

7     already and I don't --

8          MR. WAGNER:  September 19.

9          MAGISTRATE JUDGE POHORELSKY:  You know, I have

10    so much trouble getting you to answer my questions.  The

11    short answer is yes.

12         MR. WAGNER:  September 19, 2007.

13         MAGISTRATE JUDGE POHORELSKY:  Great, thank you

14    very much.

15         MAGISTRATE JUDGE GO:  Okay.

16         MR. WAGNER:  That's when it was served.

17         MAGISTRATE JUDGE POHORELSKY:  And that was the

18    -- just so I am clear on this, that was served in

19    connection with the request to admit that were served on

20    Better Homes Depot, right?

21         MR. WAGNER:  Among other things.

22         MAGISTRATE JUDGE POHORELSKY:  And then a

23    request for the production of documents served on

24    Ackerman, Raphan.

25         MR. WAGNER:  Right.

44

## Proceedings

1    MAGISTRATE JUDGE POHORELSKY:  Okay.  Was there

2    anybody else that got that Schedule B?

3    MR. WAGNER:  Just those two based on Fessler's

4    testimony.  We were mindful that we didn't want to ask

5    Madison.

6    MAGISTRATE JUDGE POHORELSKY:  I just wanted --

7    MR. WAGNER:  I know you didn't ask me, Judge,

8    but I thought it might be relevant.

9    MAGISTRATE JUDGE POHORELSKY:  I didn't ask you

10   that.  You're trying to anticipate questions I am not

11   asking.

12   MR. WAGNER:  Yes, I know.

13   MAGISTRATE JUDGE GO:  Okay.  So just to finish

14   up before we move on to the other motion, if you would

15   like to -- as you can see, Mr. Wagner, there is some

16   concern over the significance of the documents you claim

17   that were destroyed, as well as the more foundational

18   question as to the extent of the documents that Ackerman,

19   Raphan had in the first instance.  So I would like the

20   parties perhaps to agree on sending me portions of the

21   Sultzer deposition.  Perhaps Mr. Kossove should take the

22   lead in either sending me just a copy and then you can

23   point out what pages to look at or send me selected pages

24   and if you can't agree on what pages, then send me the

25   whole thing and the two of you can tell me what pages are

45

**Proceedings**

1   relevant.

2           And then secondly, if you want to brief the

3   issue of the probativeness of this evidence and the

4   admissibility of this evidence as it bears on fraudulent

5   intent, I will be happy to hear you.

6           MR. WAGNER:  Okay.

7           MAGISTRATE JUDGE GO:  Because you know --

8           MR. WAGNER:  I think we did cite some cases

9   under 404(b) but we will be glad to, if you want a

10  separate memorandum of law on --

11          MAGISTRATE JUDGE GO:  Well --

12          MR. WAGNER:  -- what can be proven by uncharged

13  acts --

14          MAGISTRATE JUDGE GO:  Well, now that you can --

15          MR. WAGNER:  -- I will give you one of --

16          MAGISTRATE JUDGE GO:  Now that you have had the

17  opportunity to hear some of the concerns, if you want to

18  brief that further, I will give you an opportunity to do

19  so.  If you want to rely on what you provided, that's

20  fine.

21          MR. WAGNER:  Your Honor?

22          MAGISTRATE JUDGE POHORELSKY:  I have one other

23  point I would like to make though and that is this.

24  Since you thought that it would make it easier on

25  Ackerman, Raphan to only produce selected documents from

46

**Proceedings**

1    the Schedule B properties, and since as it turns out, thy

2    didn't have most of those properties, it seems to me -- I

3    mean, files from most of those properties, it seems to me

4    that they ought to produce the rest of whatever they have

5    for the Schedule B properties, right, so that you're

6    entitled -- I gathered from what you were telling me that

7    there were other documents, HUD statements and stuff like

8    that, that would show the fraud, the altered document

9    fraud, that you are attempting to show.  In other words,

10   it would reflect certain people, a seller, a buyer, or --

11   and what not, so as I understand it, you don't have those

12   documents yet.

13            MR. WAGNER:  We don't have any of the sale

14   portion of any of the 96; correct.

15            MAGISTRATE JUDGE POHORELSKY:  Okay.  So

16   Mr. Kossove, let me ask you to produce the rest of the

17   Schedule B properties and -- because you know, I mean the

18   rest of the files for the Schedule B properties.

19            MR. KOSSOVE:  I have no problem doing that,

20   your Honor.

21            MAGISTRATE JUDGE POHORELSKY:  Okay.

22            MR. KOSSOVE:  The only reason we didn't is

23   because of what Mr. Wagner said to us, so that's fine.

24            MAGISTRATE JUDGE POHORELSKY:  I understand.  I

25   understand.

47

## Proceedings

1          MR. KOSSOVE:  That's fine.

2          MR. WAGNER:  And again, your Honor, you know

3    when we first asked for these files, we had no reason to

4    believe that they didn't exist.  We were, in fact,

5    affirmatively led to believe that they did exist and

6    there is nothing in Mr. Raphan's affidavit that says they

7    didn't exist but Mr. Raphan's affidavit said is we willy-

8    nily threw away files when they got to be seven years old

9    and we didn't keep a list of the files we threw away.

10          MAGISTRATE JUDGE POHORELSKY:  I read the

11   affidavit.

12          MR. WAGNER:  Okay.

13          MAGISTRATE JUDGE POHORELSKY:  Thank you very

14   much.  Yes.

15          MAGISTRATE JUDGE GO:  We will move on to the

16   motion regarding the request to admit.  And I think he

17   issue really for me anyway in this case, and it's one

18   that I think you probably may have surmised we struggled

19   with is the extent of the obligation of a litigant to do

20   research in responding to a request to admit.

21          MR. WAGNER:  In the admission, in the Schedule

22   B itself, we gave Better Homes Depot every bit of

23   information that would enable them to check alternative

24   sources.  In other words, by definition, checking ACRIS

25   was frankly a charade,  That's -- these related to the

48

**Proceedings**

1   deeds where Better Homes Depot didn't record its title,

2   so that would not be on ACRIS.

3            With respect to asking Ackerman, Raphan for its

4   files, what good did that do after Mr. Kossove basically

5   13 months after the fact, revealed that there really were

6   very few files.  So we suggested that simple logic and

7   not -- it's not up to me to suggest to Mr. Bagwin where

8   else to look but here's one very reliable bit of

9   circumstantial evidence to see whether Better Homes Depot

10  acquired title of those properties, did it pay a referee.

11  We gave them the date of the altered deed, the name of

12  the referee or the grantor on the deed, the address of

13  the property.

14           They -- banks don't throw away their files,

15  even without litigation holds.  Banks -- you can find out

16  whether Better Homes Depot or somebody acting on its

17  behalf wrote a check to Referee Jones on a particular

18  date which would conform to the date of the deed which is

19  listed on -- in the Schedule B that we gave them; right?

20  So just checking the bank, if you pick --

21           MAGISTRATE JUDGE POHORELSKY:  Just checking the

22  bank?  You mean to subpoena the bank or ask the bank to

23  produce records or --

24           MR. WAGNER:  I certainly -- you know, as

25  inconvenient --

49

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  To go find a

2    check -- you mean that you don't have a check number for?

3    I mean does that really make sense?

4          (Counsel confer)

5          MR. WAGNER:  Yes, aside from -- Mr. Cross just

6    reminds me that legitimate businesses keep tax records

7    and so on and so forth, but beyond that, your Honor --

8          MAGISTRATE JUDGE POHORELSKY:  Well no we're

9    talking about banks right now.

10          MR. WAGNER:  -- the fact is you don't need --

11          MAGISTRATE JUDGE POHORELSKY:  I was asking

12    banks --

13          MR. WAGNER:  If I give you a date and a bank

14    gives you a bank statement, your bank --

15          MAGISTRATE JUDGE POHORELSKY:  Yes.

16          MR. WAGNER:  -- for that month, how many checks

17    -- to look at that month's bank statement and say gee,

18    here's a check on the very day that this deed is dated to

19    the very referee who signed this deed.  I'm terribly

20    sorry to inconvenience them and ask them to go -- what

21    would have taken five minutes had they not discarded

22    files seven years -- purportedly because they got to the

23    age of seven and despite the litigation hold, that was

24    some magic number that entitled them to throw away files,

25    so sorry to inconvenience them, but to ask them to look

50

**Proceedings**

1   at their own bank records to see if they paid for a

2   particular building on a particular date to a particulate

3   seller.

4           MAGISTRATE JUDGE POHORELSKY:  I thought you

5   were arguing they should go to the banks.  You are saying

6   they should just check their own bank checks or whatever.

7           MR. WAGNER:  Or ask the bank can I have a copy

8   of my bank statement for this month.  Banks keep those on

9   file.  You know, it might cost you $5 for a copying fee

10  but they'll give you a bank statement.

11          MAGISTRATE JUDGE POHORELSKY:  I don't think so.

12  I mean how from a bank statement are you going to figure

13  out what check was written to whom?  I'm not too

14  persuaded by that.  But let me ask you this, why -- I

15  mean as I understand the record, Better Homes Depot

16  admits that they tossed all of these files.

17          MR. WAGNER:  Well, no, they admit that they

18  tossed all of the rehab files.  What they say is we never

19  had the real estate closing files.  Our custodian was

20  Ackerman, Raphan & Sultzer.  That's what they say.

21          MAGISTRATE JUDGE POHORELSKY:  So they would not

22  have had any of the documents that --

23          MR. WAGNER:  And your Honor --

24          MAGISTRATE JUDGE POHORELSKY:  -- in any of

25  their -- let me just if I can understand, as far as the

51

**Proceedings**

1   record reflects, the evidence reflects that whatever

2   paper they did keep and tossed away, that paper did not

3   include documents that would have helped you prove the

4   altered deed issue.

5          MR. WAGNER:  Well I think they would have been

6   -- it wouldn't have been the altered deed, but it

7   certainly would have helped prove that Better Homes Depot

8   did acquire title and -- to those properties.  Yes,

9   your Honor.

10         MAGISTRATE JUDGE POHORELSKY:  I'm not --

11         MR. WAGNER:  What real estate company?  You're

12  talking about $12, $14 million worth of real estate over

13  this two or three year period in terms of acquisition

14  costs, say if it's 96 properties.  You know, you're

15  talking about what legitimate real estate company or

16  illegitimate, what real estate company would not keep a

17  record of its acquisitions?

18         And if it didn't, right, particularly after

19  every to do with Better Homes and Madison became the

20  subject of litigation, even aside from Polinetsky, in

21  Miller in 2002, when we started this case, two years

22  before any of the files reached the age of seven.

23         MAGISTRATE JUDGE POHORELSKY:  Here's what I am

24  getting to and -- because I didn't see it argued but it

25  strikes me as a more straightforward way to deal with

52

**Proceedings**

1   this.  I mean, they destroyed their records, therefore

2   these admissions should be deemed admitted.  Those

3   records would have enabled them to answer these

4   questions.  Why aren't they deemed admitted, because they

5   destroyed the records that -- their own records, that

6   would have enabled them to answer these questions.

7              MR. WAGNER:  Well the only reason I didn't do

8   that, your Honor, is that they represented and I could

9   not disprove that they never -- they, Better Homes Depot,

10  never retained their own acquisition and sale, all of the

11  different legal documents that Ackerman, Raphan acted as

12  their custodian, that all of the legal documents were

13  possessed by Ackerman, Raphan.

14             What I don't understand is that when this

15  lawsuit began, certainly I assume Mr. Kossove told

16  Ackerman, Raphan and this is again before any files would

17  have been discarded, told Ackerman, Raphan --

18             MAGISTRATE JUDGE POHORELSKY:  You're really

19  just -- you veer way away from my questions.  It's a

20  constant problem.  But in any event --

21             MR. WAGNER:  I'm sorry.

22             MAGISTRATE JUDGE POHORELSKY:  My question --

23             MR. WAGNER:  What did I veer away from?

24             MAGISTRATE JUDGE POHORELSKY:  -- didn't have

25  anything to do with Ackerman, Raphan.  I was just asking

53

**Proceedings**

1  about Better Homes Depot.  You're saying you didn't ask

2  for it because you don't have the proof that they ever

3  had the information in their files that would have

4  enabled them to answer yes or no --

5        MR. WAGNER:  Right.

6        MAGISTRATE JUDGE POHORELSKY:  -- these requests

7  to admit.

8        MR. WAGNER:  Indeed, they said the contrary.

9        MAGISTRATE JUDGE POHORELSKY:  And that's why

10  you didn't seek it.  Okay.  That's the only question I

11  have.  Thank you very much.  Do you have any questions,

12  Judge Go?  I'm sorry, I interrupted you.

13        MAGISTRATE JUDGE GO:  Well, what I see

14  essentially is a hybrid spoliation motion really.  I mean

15  -- and it's -- you know, I am struggling with how to

16  address it in the context of a motion to compel responses

17  to a request to admit because as you know, you are

18  entitled to relief as specified under the rule.

19        MR. WAGNER:  I think the answer to that,

20  your Honor, is that there were -- as I said, I understand

21  they are somewhat more labor intensive; had they not

22  thrown away files, it wouldn't have been labor intensive

23  but those files having been thrown away during 2004 and

24  2005 as indicated in the Raphan affidavit, that I think

25  it's incumbent upon Ackerman, Raphan and/or  Better Homes

54

### Proceedings

1  Depot actually for not having told its custodian keep our

2  records safe.  That if they have to spend some time,

3  every referee's deed, even if it's not in the litigation

4  file, there's a thing called a referee's report.  For

5  every one of those transactions where there's a -- it was

6  purchased by Better Homes Depot in foreclosure, a

7  referee's report will be sitting right there in the court

8  records and it will say Better Homes Depot won the bid on

9  this day and then later on in the document it said on

10  this date, they paid the referee the money and title was

11  conveyed to Better Homes Depot.

12         MAGISTRATE JUDGE POHORELSKY:

13     But that document, was that document found within any

14  of the Schedule A property files --

15         MR. WAGNER:  Well they wouldn't have that --

16         MAGISTRATE JUDGE POHORELSKY:  Hold on.  Hold

17  on.  If you let me finish asking my question, I'm talking

18  about the Ackerman, Raphan files, focusing on Ackerman,

19  Raphan, did you find those kinds of documents in the

20  Schedule A files?

21         MR. WAGNER:  A referee's report would not be in

22  the Schedule A file.

23         MAGISTRATE JUDGE POHORELSKY:  Okay.  It

24  wouldn't be.  That's my point.

25         MR. WAGNER:  Right.

55

**Proceedings**

1       MAGISTRATE JUDGE POHORELSKY:  So how do we find
2  that they destroyed that if they never had it?
3       MR. WAGNER:  I'm not saying they destroyed the
4  referee's report, your Honor.
5       MAGISTRATE JUDGE POHORELSKY:  Well but I
6  thought you were talking about all of these acquisitions
7  --
8       MR. WAGNER:  No, Judge Go asked me if there
9  were alternative means by which they could be asked to
10  admit --
11       MAGISTRATE JUDGE POHORELSKY:  Oh.
12       MR. WAGNER:  -- that they owned a property and
13  that could be proven, directly proven.  They claim only
14  the deed would prove that and the deeds don't exist
15  anymore.  And I am saying that's not a true statement,
16  that it can be proven directly by a -- a referee's report
17  would be an index number from the underlying foreclosure.
18       MAGISTRATE JUDGE POHORELSKY:  I see, in a court
19  file somewhere.
20       MR. WAGNER:  Right.  And so that would be --
21  right -- in court files.  And I know that's a little more
22  labor intensive but, you know, it's their own thing --
23       MAGISTRATE JUDGE POHORELSKY:  I understand your
24  argument, given the fact that they had already --
25       MR. WAGNER:  -- and that circumstantially when

Transcription Plus II       Rosalie Lombardi

56

## Proceedings

1    you pay that referee, you're leaving a paper trail, a

2    canceled check, a bank statement, a withdrawal who will

3    say who the payor was and who the payee was and probably

4    even in the memo corner of the check would indicate what

5    the $120,000 or whatever, was being paid for.  And that

6    that would conform perfectly.  It would match the date,

7    the name of the payee, and the amount.  You can get that

8    from the altered deeds, that information, and you can say

9    well if Better Homes went and paid the full amount, it

10   means they didn't assign their bid or that the deal

11   didn't fall through where they withdrew their bid or some

12   other aborting of their acquisition of title.

13           These are all easy ways to establish that

14   Better Homes Depot acquired title or at least by an

15   overwhelming preponderance of the evidence.  The

16   referee's report would say it expressly.

17           MAGISTRATE JUDGE POHORELSKY:  Well the

18   referee's report, how is that -- is that filed in court

19   records by address?

20           MR. WAGNER:  It's filed in court records by

21   index number, your Honor.

22           MAGISTRATE JUDGE GO:  By the foreclosure

23   number.

24           MR. WAGNER:  The underlying foreclosure is bank

25   A sues the homeowner.

57

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  Given the

2   information that you have on Schedule B --

3          MR. WAGNER:  Right.

4          MAGISTRATE JUDGE POHORELSKY:  -- how do you

5   track back from Schedule B back to these court files?

6          MR. WAGNER:  Okay.  Every address is listed on

7   ACRIS.  The altered deed, that referee's deed actually

8   has int eh body of the deed the caption in the middle of

9   the deed --

10          MAGISTRATE JUDGE POHORELSKY:  Okay.

11          MAGISTRATE JUDGE GO:  Yes.

12          MR. WAGNER:  -- from the underlying foreclosure

13   with an index number.

14          MAGISTRATE JUDGE POHORELSKY:  So that index

15   number would then track back to where the referee's

16   report would be.

17          MR. WAGNER:  Exactly.

18          MAGISTRATE JUDGE POHORELSKY:  I got it.

19          MR. KOSSOVE:  Your Honor, I just want to make

20   one --

21          MAGISTRATE JUDGE POHORELSKY:  Well, wait, wait.

22   You'll get a chance to respond.

23          Do you have any more for Mr. Wagner?

24          MAGISTRATE JUDGE GO:  Yes.  No, I understand

25   that.

58

**Proceedings**

1          MAGISTRATE JUDGE POHORELSKY:  You understand

2     that.  Okay.  So that's one alternative source that you

3     say they --

4          MR. WAGNER:  Right.

5          MAGISTRATE JUDGE POHORELSKY:  -- should have

6     been required to look at --

7          MR. WAGNER:  Right.

8          MAGISTRATE JUDGE POHORELSKY:  -- and could

9     have.  And given the fact that they otherwise placed

10    themselves in a position to be unable to answer these

11    requests to admit, that that additional burden is one

12    they should have been required to bear.

13         MR. WAGNER:  Correct.

14         MAGISTRATE JUDGE POHORELSKY:  Or that if they

15    don't bear, they should bear the consequences.

16         MR. WAGNER:  That and their own banking records

17    as well, your Honor.

18         MAGISTRATE JUDGE GO:  Now --

19         MAGISTRATE JUDGE POHORELSKY:  Okay.

20         MAGISTRATE JUDGE GO:  -- that really covers the

21    acquisition end.

22         MR. WAGNER:  Right.

23         MAGISTRATE JUDGE GO:  On the sales end, where

24    would that information be relevant?

25         MR. WAGNER:  The sales end, we don't need the

59

**Proceedings**

1   deed because that's the recorded ACRIS deed.  What we

2   need are things like the appraisal, the CLA Appraisals,

3   is a defendant here.  We need the contract of sale -- to

4   sell because --

5              MAGISTRATE JUDGE GO:  No, no.

6              MR. WAGNER:  Oh, I'm sorry.

7              MAGISTRATE JUDGE GO:  We're talking -- just to

8   be focused, since we're dealing with your motion to

9   compel with respect to the request to admit --

10              MAGISTRATE JUDGE POHORELSKY:  Or the motion for

11   sanctions, I guess.

12              MAGISTRATE JUDGE GO:  For sanctions, right.

13              MAGISTRATE JUDGE POHORELSKY:  For admissions.

14              MAGISTRATE JUDGE GO:  For admissions.

15              MAGISTRATE JUDGE POHORELSKY:  Deeming it --

16              MR. WAGNER:  Just to deem admitted pursuant to

17   your order.

18              MAGISTRATE JUDGE POHORELSKY:  -- admitted.

19              MR. WAGNER:  We don't think that the made

20   reasonable inquiry beyond the November 29 decision that

21   both your Honor's joined in.  You said you can recheck

22   ACRIS, recheck Ackerman, Raphan, and engage in any other

23   reasonable inquiry.

24              So basically the essence -- we don't think that

25   they engage -- that the only two sources they did check

60

### Proceedings

1  were the sources that they knew would not have the

2  information.  And they failed to check any source that

3  might reveal the information.

4          MAGISTRATE JUDGE GO:  Okay.  No, my question

5  was directed at the request to admit that relate to the

6  purchasers -- I mean, the sale to various purchasers

7  since there are a few in contention.

8          MR. WAGNER:  Right.

9          MAGISTRATE JUDGE GO:  And so that kind of

10  information would not be available in the referee's

11  report.

12          MR. WAGNER:  Right.  No, for those admissions

13  that's correct, your Honor.  That would be in listed in

14  the HUD-1 which would say who the seller was and who the

15  purchaser was.  And the HUD-1 is like the last document

16  signed off on at a closing.  And if it says Ackerman,

17  Raphan was the bank attorney, Better Homes Depot was the

18  seller and Jane Doe or John Doe was the buyers in the

19  sale transaction, we're assuming Better Homes Depot

20  wasn't selling or couldn't sell what it didn't own.

21          MAGISTRATE JUDGE GO:  Well the motion is with

22  respect to Better Homes's failure to respond to -- or

23  with respect to its supplemental responses to your

24  request to admit.  So now it's -- the only thing that I

25  think the parties are in agreement on today, anyway, is

61

**Proceedings**

1   that Ackerman just doesn't have very much.  So I am

2   asking you as I said, you know --

3           MR. WAGNER:  Madison would.

4           MAGISTRATE JUDGE GO:  -- what I am struggling

5   with is what they ought to be looking at in order to

6   respond.

7           MR. WAGNER:  What we had hoped they did in

8   terms of the sale portion, Madison Home, would -- that's

9   why we made that application to Judge Pohorelsky -- we

10  thought we could mitigate some of the negative

11  consequences by at least establishing how many of the --

12  we could determine from the sale transactions, how many

13  Mr. Weinstock or Mr. David were the buyer's lawyer and

14  how many of those cases did M&T Mortgage become the

15  assignee because that's critical for us.  We have to

16  fight off in Leo White's case particularly, that M&T is

17  going to claim to be a holder in due course when they

18  should --

19          MAGISTRATE JUDGE POHORELSKY:  But one of my

20  questions here was whether or not we could mitigate --

21  well, it was whether or not it wouldn't serve your

22  purposes for me to reconsider in light of Ackerman,

23  Raphan's non-production, reconsider the decision not to

24  require MHE to produce the files.

25          MR. WAGNER:  Your Honor, I would be delighted

62

**Proceedings**

1  if you would reconsider.

2         MAGISTRATE JUDGE POHORELSKY:  Well it occurs to

3  me that --

4         MR. WAGNER:  That's why we made the

5  application.

6         MAGISTRATE JUDGE POHORELSKY:  -- there could be

7  some representative -- a subset of those files because I

8  know there's 120 or 95.

9         MAGISTRATE JUDGE GO:  No, 96.

10         MR. WAGNER:  No.

11         MR. BAGWIN:  96.

12         MR. WAGNER:  I think 96.

13         MAGISTRATE JUDGE POHORELSKY:  96.  So if you

14  take 20 percent of those and if I require MHE to produce

15  20 percent of those, that should give you a reasonable

16  sample, so that you can raise your inference that you

17  want to raise from these documents a to the joint

18  participation in all of these folks in these altered deed

19  kinds of transactions to give rise to your evidence of

20  intent which I am not all that sure would ever be

21  admitted anyway, but this is just discovery.  Whether

22  that might not be a way to solve part of this problem.

23         MR. WAGNER:  Your Honor, the only reason that I

24  am reluctant, in effect, take a pare down list of the 96

25  is -- no, but yes, it is already pared down, but the 96

63

## Proceedings

1  we want to know specifically or let me put it this way,

2  the contracts of sale and other documents will tell us of

3  the 96 how many Steve Weinstock and how many C. Peter

4  David were on, how many were bought by M&T, all of whom -

5  - how many were --

6          MAGISTRATE JUDGE POHORELSKY:  I understand.

7          MAGISTRATE JUDGE GO:  Well, but --

8          MAGISTRATE JUDGE POHORELSKY:  It strikes me

9  what you're telling me is that -- the scenario you

10 painted is that they all sat around a table and watched

11 somebody white out these documents and participate in the

12 fraud that way, so they all must have had knowledge and

13 intent to defraud people out of a title or out of a

14 proper deed, and then therefore transfer that intent and

15 say then therefore, these guys must have all had the

16 intent to defraud my client when they obtained a property

17 that didn't have all of the repairs made.  I think that

18 the connection is mighty tenuous.

19         MR. WAGNER:  Well --

20         MAGISTRATE JUDGE POHORELSKY:  But what I am

21 saying is doesn't give you that -- I mean, all you've got

22 to do is show that Weinstock and David each participated

23 in a couple, right?  That they participated in a couple

24 of those transactions where they all sat around and

25 watched somebody alter a deed.

64

### Proceedings

1        MR. WAGNER:  Your Honor?

2        MAGISTRATE JUDGE POHORELSKY:  And if you do

3    that, then you've got your evidence that you can present

4    to the jury or try to convince Judge Garaufis and

5    Judge Gershon that they ought to be admitted at trial to

6    show the intent.

7        MR. WAGNER:  Well, I --

8        MAGISTRATE JUDGE POHORELSKY:  Isn't that good

9    enough?

10       MR. WAGNER:  I don't know what numbers

11   Judge Garaufis or Judge Gershon are going to say will

12   establish a pattern and practice, for instance, of M&T

13   buying this kind of paper, of Steve Weinstock

14   representing a buyer when, for instance, he knows there

15   is no referee in the room.

16       MAGISTRATE JUDGE POHORELSKY:  Okay.  I

17   understand.  You think you need greater numbers.

18       MR. WAGNER:  Yes.

19       MAGISTRATE JUDGE GO:  Well, just by way of

20   clarification because I know at the last conference or a

21   couple of conferences before, I had overrided Judge -- or

22   I did not follow Judge Pohorelsky's prohibition on

23   obtaining files from Madison.  And it did require

24   production of files for designated purchasers.  And then

25   you followed along with that.

65

**Proceedings**

1        So I just want to know how many files were

2   produced from the Schedule B properties?

3        MS. LENOWITZ:  I believe from what was

4   designated, we were able to locate three.

5        MAGISTRATE JUDGE GO:  Well how many were

6   designated?  How many of the non-party depositions or how

7   many involved Schedule B properties and how many files

8   were you able to locate?

9        MS. LENOWITZ:  Unfortunately, I don't have the

10  list with me.

11        MR. KOSSOVE:  I think it was three.

12        MS. LENOWITZ:  it was three that --

13        MAGISTRATE JUDGE GO:  Oh, it was three, so you

14  were able to locate all of the files.

15        MR. BAGWIN:  From the -- I can't speak our list

16  but I know from the plaintiff's list they had designated

17  six Schedule B files.  I don't recall what was on ours.

18        MAGISTRATE JUDGE GO:  So you were only able to

19  find --

20        MS. LENOWITZ:  Three out of all of the Schedule

21  B properties that were designated from their side and

22  from out side, we were able to locate three.

23        MAGISTRATE JUDGE GO:  Half of them.

24        MS. LENOWITZ:  However, what I wanted to, if

25  you would allow me just to speak to you changing your

Transcription Plus II      Rosalie Lombardi

66

**Proceedings**

1    order.

2                  MR. WAGNER:  The reconsideration.

3                  MS. LENOWITZ:  Right, the reconsideration.  One

4    of our arguments in opposition, I won't revisit the other

5    arguments, one of the arguments in opposition was that

6    they didn't identify that we were actually involved in

7    all of those transactions.  So to require us to go

8    through our warehouse and look for files that may or may

9    not exist would be unduly burdensome.  So unless they

10   could really, you know, say that these are the

11   transactions from that list that you were involved in,

12   now go look for them, I don't --

13                  MAGISTRATE JUDGE POHORELSKY:  Understood.

14                  MS. LENOWITZ:  -- find that --

15                  MAGISTRATE JUDGE POHORELSKY:  A fair request.

16                  MS. LENOWITZ:  Thank you, your Honor.

17                  MAGISTRATE JUDGE GO:  I see Mr. Wagner shaking

18   his head.

19                  MR. WAGNER:  Everyone was a Madison.

20                  MAGISTRATE JUDGE GO:  And I do think that this

21   issue was --

22                  MAGISTRATE JUDGE POHORELSKY:  Addressed.

23                  MAGISTRATE JUDGE GO:  -- addressed some time

24   before you came along the scene, Ms. Lenowitz --

25                  MR. WAGNER:  Yes.

67

**Proceedings**

1       MAGISTRATE JUDGE GO:  -- because we have been

2  struggling with just lists of properties for quite a long

3  time.  And I do think that the first, what you might term

4  as a concession, Mr. Wagner, to paring down the list was

5  to limit sales to the sales involving Madison.

6       MS. LENOWITZ:  From what I understand, that was

7  the Schedule A list.

8       MAGISTRATE JUDGE GO:  No, no, no.

9       MS. LENOWITZ:  Okay.  Sorry.

10      MAGISTRATE JUDGE GO:  But I mean they asked for

11 other properties and then I pared down the list further.

12      MAGISTRATE JUDGE POHORELSKY:  Yes, but I don't

13 know -- all right.

14      MR. WAGNER:  At no point did we --

15      MAGISTRATE JUDGE GO:  That may be --

16      MR. WAGNER:  -- or would we have asked for any

17 property where it wasn't Madison financed.

18      MAGISTRATE JUDGE GO:  And --

19      MAGISTRATE JUDGE POHORELSKY:  But how do you --

20 I am just curious how you do know Schedule B properties

21 were Madison financed as far as the purchase.

22      MR. WAGNER:  Because the mortgage is on ACRIS.

23      MAGISTRATE JUDGE GO:  It's on --

24      MAGISTRATE JUDGE POHORELSKY:  And that's right,

25 the mortgage document is --

68

**Proceedings**

1          MR. WAGNER:  The mortgage is recorded on ACRIs.

2          MAGISTRATE JUDGE POHORELSKY:  Okay, so there

3    you go.

4          MAGISTRATE JUDGE GO:  And the assignment of the

5    mortgage to M&T would also be on record, so you could get

6    a -- or should be on record.

7          MR. WAGNER:  Yes.  What you'll find in Kings

8    County Supreme Court Judges on a daily basis issue

9    decisions rarely against the failure of assignees to

10   record their mortgages.  They tend to keep them in their

11   back pocket unless and until it's time to start a

12   foreclosure.  And then they'll file a lis pendence and

13   record their mortgage and start their foreclosure.

14         MAGISTRATE JUDGE GO:  Right, but at some point

15   in time, you may be aware of M&T's involvement with some

16   of those 96 properties.

17         MR. WAGNER:  That's true, your Honor, but again

18   if the Court does -- if Judge Pohorelsky reconsiders or

19   if the Court orders that the 96 sale transactions be

20   provided in every single one of those, I think without

21   exception, there's a single piece of paper that just says

22   assignment of mortgage and it's usually actually a rubber

23   stamp from Madison Home Equities to the assignee.  And

24   it's just one piece of paper.

25         MAGISTRATE JUDGE GO:  Well --

69

## Proceedings

1       MR. WAGNER:  And if --

2       MAGISTRATE JUDGE GO:  I have no problems with

3   that.  The point I am trying to make and this is really

4   not my point to make since I am not reconsidering any

5   decision in that regard but perhaps to assist the

6   parties, is that I think you can readily identify the

7   properties in which M&T was involved in.

8       Secondly, I have no doubt that you probably

9   printed out the transfer tax forms or whatever, which

10  would list who the sellers are and perhaps the attorneys.

11      MR. WAGNER:  Well, some of -- the RPTTs (SIC)

12  in  the altered deed situation are very -- they

13  themselves -- I mean, that's part of, excuse me, I don't

14  mean to be pejorative, but that's part of the crime.

15      MAGISTRATE JUDGE GO:  No, no, I understand.

16  But I am just saying to assist in focusing and helping

17  narrow down the list, and this is with the understanding

18  that Madison's search may be less than complete, so you

19  know, I will leave it to Judge Pohorelsky to decide how

20  much of his prior decision he wants to alter but --

21      MR. WAGNER:  In checking --

22      MAGISTRATE JUDGE GO:  Well wouldn't you have

23  some documents now with respect to the 96 properties that

24  might give you a pretty idea of what attorneys were

25  involved?

70

**Proceedings**

1          MR. WAGNER:  Yes, the RPTT and it is common

2   practice though not legally required, that a buyer's

3   lawyer would be listed.  We found that in rare -- except

4   for rare instances, in printing out that RPTT cover page

5   that precedes the deed, that particularly Mr. Weinstock

6   and Mr. C. Peter David, their names were often

7   conspicuously absent, even though we knew that they

8   participated in the transaction.  And one of -- usually -

9   - you know on the second page of a --

10          MAGISTRATE JUDGE GO:  All right.  That's my

11   question.  I understand.  And how about the back of the

12   altered deed?

13          MR. WAGNER:  That -- right.  The return to box?

14          MAGISTRATE JUDGE GO:  Yes.

15          MR. WAGNER:  That was the one.  The first thing

16   we looked at, we have a handful of the altered deeds

17   where it says return to Steven F. Weinstock, we have none

18   -- C. Peter David made himself as invisible as possible.

19          MAGISTRATE JUDGE GO:  Then where were deeds

20   returned to other than Weinstock?

21          MR. WAGNER:  It would be returned to the buyer

22   directly or it would actually be left blank.

23          MAGISTRATE JUDGE POHORELSKY:  All right.

24   Mr. Bagwin wanted to say something.

25          MAGISTRATE JUDGE GO:  Yes.

71

**Proceedings**

1      MR. BAGWIN:  That was quite a while ago.

2      MAGISTRATE JUDGE POHORELSKY:  Do you remember?

3  It had to do with the burden that you are required to

4  undertake -- at least -- that's at least part of what I

5  think you were seeking to address because --

6      MR. BAGWIN:  Well, what --

7      MAGISTRATE JUDGE POHORELSKY:  -- Mr. Wagner was

8  responding to my question with respect to --

9      MR. BAGWIN:  Well the first thing I want to --

10  the Schedule B list, we didn't create it.  The

11  plaintiffs, the third party plaintiffs, they created it.

12  When you go on ACRIS -- I mean I don't even know if these

13  are Better Homes transactions, just like Madison was

14  saying we don't know if these are our transactions.  Well

15  it's easier to tell if it was a Madison transaction

16  because the mortgages are on there.  We don't appear in

17  the chain of title. It's very hard for me to -- and for

18  my client at this juncture, the 97, 98 transactions, it's

19  impossible for us to say you know with the large majority

20  of these, that these are Better Homes transactions.  So

21  we don't even know how they compiled this list and what

22  the -- you know, the --

23      MAGISTRATE JUDGE POHORELSKY:  But at least

24  insofar as that's concerned, that is because your client

25  discarded all of their records.

72

**Proceedings**

 1          MR. BAGWIN:  Well they may not --

 2          MAGISTRATE JUDGE POHORELSKY:  I mean --

 3          MR. BAGWIN:  They also may not have had the

 4    records, if they didn't participate in these

 5    transactions.

 6          MAGISTRATE JUDGE POHORELSKY:  Well I know but

 7    they discarded all records that may have been able to

 8    disclose one way or the other whether they were, right?

 9    And given the sort of the history of the relationship

10    between Madison and your client, it -- I don't know that

11    we can't hold that against your client frankly.

12          MR. BAGWIN:  Well --

13          MAGISTRATE JUDGE POHORELSKY:  I think we may be

14    entitled to make the assumption that Schedule B

15    properties, given the other markers that indicate your

16    client's involvement, you know, that they were -- that

17    your client was, in fact, involved.

18          MAGISTRATE JUDGE GO:  Okay.

19          MR. BAGWIN:  I'm just saying we don't know how

20    the list was compiled.

21          MAGISTRATE JUDGE GO:  Well, let's --

22          MR. BAGWIN:  We don't know where they got their

23    information.  I mean, that's something I think the Court

24    should --

25          MAGISTRATE JUDGE GO:  Let me interrupt --

73

## Proceedings

1          MAGISTRATE JUDGE POHORELSKY:  Understood.

2          MAGISTRATE JUDGE GO:  -- and ask Mr. Wagner,

3    how do you know that Better Homes Depot was involved in

4    the --

5          MR. WAGNER:  In these transactions?

6          MAGISTRATE JUDGE GO:  -- Schedule B properties?

7          MR. WAGNER:  We know that Madison Home Equities

8    did not finance a stranger on a particular day to buy

9    directly from a referee.

10         MAGISTRATE JUDGE GO:  Well did you know if

11   Madison provided financing to other purchasers of

12   properties from other sellers?

13         MR. WAGNER:  Madison's -- this had -- as

14   Judge Pohorelsky said, this had all of the markers.

15         MAGISTRATE JUDGE POHORELSKY:  What are they?

16         MR. WAGNER:  And what we did is we actually

17   went and at random -- some of the law students working

18   for me that summer when we were compiling the list, we

19   went and at random pulled five or six of the referee's

20   reports and in every such case, when you had this

21   juxtaposition of dates, Better Homes Depot was the

22   grantee of title from the referee.  We just felt that

23   five or six would be woefully insufficient when

24   Mr. Bagwin keeps making the point in his papers, how are

25   we supposed to remember, we did thousands of

74

**Proceedings**

1  transactions.

2          MAGISTRATE JUDGE GO:  No, hold on.

3          MAGISTRATE JUDGE POHORELSKY:  What are the

4  markers that makes you think that this particular -- any

5  particular property on Schedule B was a property that

6  Better Homes Depot was involved in?  As I understand it

7  -- let me just -- I mean, I am way behind Judge Go  in

8  understanding real estate transactions.  So bear with me.

9  Don't assume I understand anything and here, I will let

10  you be as fulsome as you want.

11          But as I understand it from ACRIS, and I looked

12  at it, it's been a while, you do see the first page of

13  the mortgage; right?  I think the first page, right?  And

14  that will show who the mortgagee is --

15          MR. BAGWIN:  Right, that shows it.

16          MAGISTRATE JUDGE POHORELSKY:  -- which would be

17  Madison.

18          MR. BAGWIN:  Correct.

19          MAGISTRATE JUDGE POHORELSKY:  So that's one way

20  that you know that everybody on Schedule B was someone

21  was financed by Madison.

22          MR. BAGWIN:  Correct.

23          MAGISTRATE JUDGE POHORELSKY:  And that Madison

24  was part of the deal.  Now the question is how do you

25  know from whatever you saw on ACRIS or anywhere else,

75

### Proceedings

1  that Better Homes Depot was also in the deed?

2          MR. WAGNER:  We -- and this part direct

3  knowledge, part inferential if I can explain.

4          MAGISTRATE JUDGE POHORELSKY:  Give me the

5  direct first.

6          MR. WAGNER:  The direct first was that we took

7  those mortgages and we reached out and we tracked down

8  about 15 to 20 of the individuals and asked them who they

9  bought their homes from and every one of them said Better

10  Homes Depot.  And they didn't notice until we told them

11  to look for it, that their deed -- because it's not the

12  individual who records the deed.  Gail Zucker would have

13  walked out and she would have recorded the deed.

14          So many of these people were never even given

15  copies of the deed that they actually got.  They just --

16  they trusted their lawyers, so they walked out without

17  any papers.

18          MAGISTRATE JUDGE POHORELSKY:  Okay.  But the --

19  and the grantor on those deeds?

20          MR. WAGNER:  The grantor on those deeds were

21  referees and the grantees were the individuals we

22  contacted --

23          MAGISTRATE JUDGE POHORELSKY:  Purchasers, got

24  it.

25          MR. WAGNER:  -- and when asked who did you buy

76

## Proceedings

1  your house from, every one of them said Better Homes

2  Depot.

3           MAGISTRATE JUDGE POHORELSKY:  So about 15 or 20

4  out of that list.

5           MAGISTRATE JUDGE GO:  You could get them

6  (inaudible).

7           MR. WAGNER:  About 20 out of 20.

8           UNIDENTIFIED SPEAKER:  20 out of 20 checked.

9           MR. WAGNER:  We reached out to 15 or 20, I

10  don't remember the exact but --

11           MAGISTRATE JUDGE POHORELSKY:  That's what I am

12  saying, 15 or 20 out of the number on the list --

13           MR. WAGNER:  Out of the list.

14           MAGISTRATE JUDGE POHORELSKY:  -- were --

15           MR. WAGNER:  And 100 percent of them said --

16           MAGISTRATE JUDGE POHORELSKY:  Understood.

17           MR. WAGNER:  -- 100 percent, we bought from

18  Better Homes Depot.

19           MAGISTRATE JUDGE POHORELSKY:  Understood.

20           MAGISTRATE JUDGE GO:  Okay.

21           MAGISTRATE JUDGE POHORELSKY:  Understood.

22           MAGISTRATE JUDGE GO:  And would --

23           MAGISTRATE JUDGE POHORELSKY:  And that's the

24  only information?

25           MR. WAGNER:  But then as again, it was the

77

**Proceedings**

1  marker where a referee gets a house in foreclosure and a

2  buyer bids on it, so that the chain of title looks like

3  it is going from the referee to the end buyer with a

4  mortgage, financed by Madison Home Equities, that to us

5  met a pattern that they were not going to finance an

6  individual bidder.  We have never known Madison to do

7  that.

8         UNIDENTIFIED SPEAKER:  Because they are HUD

9  houses.

10         MR. WAGNER:  These are -- right.

11         UNIDENTIFIED SPEAKER:  They're all good loans.

12         MR. WAGNER:  Right, they're FHA insured

13  mortgages.

14         MAGISTRATE JUDGE POHORELSKY:  That's apparent

15  from the ACRIS record, too.

16         MR. WAGNER:  It's on the mortgage.

17         MAGISTRATE JUDGE POHORELSKY:  Okay.

18         UNIDENTIFIED SPEAKER:  Actually that is not

19  financing.

20         MAGISTRATE JUDGE GO:  I don't know.  You know,

21  I don't think the ACRIS records would be a basis for

22  making any kind of a generalization as to the extent of

23  Madison's business.  But I just had one more very

24  specific question because you didn't mention the RPT

25  forms and that Better Homes Depot was listed.  So do you

78

**Proceedings**

1   have RPT --

2            MR. WAGNER:  No, the RPT --

3            MAGISTRATE JUDGE GO:  As a seller, as a seller

4   for some of the 96 properties; is that correct?

5            MR. WAGNER:  No, no,no, they were not I think

6   listed as --

7            MAGISTRATE JUDGE GO:  Then who was listed as

8   the seller, the referee?

9            MR. WAGNER:  They didn't -- the whole idea of

10  the scam --

11           MAGISTRATE JUDGE GO:  So the referee was

12  listed.

13           MR. WAGNER:  -- the referee would have been

14  listed.

15           MAGISTRATE JUDGE GO:  Okay.

16           MR. WAGNER:  That was the -- they didn't want

17  to pay the real property transfer tax.

18           UNIDENTIFIED SPEAKER:  One tax, one level of

19  tax was avoided.

20           MAGISTRATE JUDGE POHORELSKY:  That's right.

21  That's what this comes down to.

22           MAGISTRATE JUDGE GO:  That's fine.

23           MR. WAGNER:  If they didn't --

24           MAGISTRATE JUDGE GO:  No, no.

25           MR. WAGNER:  If they kept -- that was their

79

## Proceedings

1   motive for doing what they were doing.

2          MAGISTRATE JUDGE POHORELSKY:  They weren't

3   trying to fraud people of proper title.

4          MAGISTRATE JUDGE GO:  No, I know, but I

5   thought --

6          MR. WAGNER:  That was incidental.

7          MAGISTRATE JUDGE GO:  Okay.  No I misheard.

8          MR. WAGNER:  Okay.

9          MAGISTRATE JUDGE GO:  I just wanted to see if

10  there was some other evidence that you had --

11         MR. WAGNER:  But again --

12         MAGISTRATE JUDGE GO:  -- concrete evidence of

13  Better Homes Depot involvement in these transactions

14  because the concern raised by Ms. Lenowitz is that they

15  would be required to search for files that may not have

16  anything to do with Better Homes Depot.

17         MR. WAGNER:  Your Honor, to really reduce it to

18  he simplest form, if somebody said to me, you know, you

19  still owe me -- Rick, you still owe me $500 from eight

20  years ago, and I say no, I paid you.  And they say no you

21  didn't, you never paid me.  I could go to JP Morgan Chase

22  with whom I bank and get my bank statement for a

23  particular -- if I remembered the month or the day and I

24  could get my bank statement and a canceled check for a

25  payment that I made and it wouldn't -- it would be

80

**Proceedings**

1   writing a letter to my bank, and they would be responding

2   to me.  And that's not too much to ask of Better Homes

3   Depot and -- well, particularly of Better Homes Depot.

4   If Mr. Bagwin standing up here and saying we can't

5   remember if we really bought any of those 96 properties,

6   well they sold all of those 96 properties and I think the

7   Madison files will prove that, so unless they were

8   selling something they never bought, which would be also

9   interesting, I think they bought that.

10          But in addition to that, they can see if they

11  paid for it.  They can see how much they paid for it.

12  And they can see who they paid for it, just by checking

13  bank -- 96 bank records for 96 payments.  And if it turns

14  out that only 80, they actually took title to, then it's

15  only 80.  But I think it's going to be more than that.

16          If they assigned it, they would have paid the

17  10 percent down and then they would have sold their bid

18  and the assignee of the bid would have gotten the deed

19  from the referee.

20          MAGISTRATE JUDGE POHORELSKY:  Yes, but one of

21  the problems here is if they weren't in the transaction,

22  then the only way you put it is in the absence of

23  records; right?

24          MR. WAGNER:  Well --

25          MAGISTRATE JUDGE POHORELSKY:  So it's like

81

**Proceedings**

1  proving a negative.  So I am not as convinced by that one

2  but the thing about checking the Court records make some

3  sense.  So you know --

4              MR. BAGWIN:  Here's the problem, your Honor.

5  You know, Mr. Wagner says oh, these are all foreclosures,

6  okay?  They on their pattern and practice witness list,

7  they --

8              MAGISTRATE JUDGE POHORELSKY:  Let me back up.

9  I thought the assumption was that all of these were

10  referees deeds.

11              MR. WAGNER:  Not all were, a substantial,

12  probably 70, 75 percent would be my guess.

13              MAGISTRATE JUDGE POHORELSKY:  I see.  I am

14  sorry, okay.

15              MR. WAGNER:  Sometimes people give a deed in

16  lieu of foreclosure to a bank and then the bank will sell

17  privately.  Sometimes HUD pays off the insurance, so the

18  deed will come from --

19              MAGISTRATE JUDGE POHORELSKY:  Okay.  But you're

20  saying that of 96 in Schedule B, you think about three-

21  fourths of them --

22              MR. WAGNER:  Probably.

23              MAGISTRATE JUDGE POHORELSKY:  -- were referee

24  deeds.

25              MR. WAGNER:  I think about that.  That would be

82

**Proceedings**

1   my --

2            MR. BAGWIN:  I am not convinced --

3            MAGISTRATE JUDGE GO:  Do you know which --

4            MR. WAGNER:  I don't know.  That's just an

5   estimate.

6            MR. BAGWIN:  I'm not convinced of that,

7   your Honor.

8            MAGISTRATE JUDGE GO:  Wait, wait.  Do you know

9   which ones were ones in which a referee was involved?

10            MR. WAGNER:  ACRIS would indicate that.  I

11   could certainly --

12            MAGISTRATE JUDGE GO:  Do you have that

13   information?

14            MR. WAGNER:  I could winnow that out.

15            MAGISTRATE JUDGE GO:  Okay.

16            MAGISTRATE JUDGE POHORELSKY:  Oh, that's right,

17   well ACRIS would show that.

18            MR. BAGWIN:  Your Honor?

19            MAGISTRATE JUDGE GO:  But you already have --

20   and you have the ACRIS information, so you could compile

21   --

22            MR. WAGNER:  I could winnow that out.

23            MAGISTRATE JUDGE GO:  You could just designate

24   which ones on the list involve a referee.

25            MAGISTRATE JUDGE POHORELSKY:  They could -- but

83

## Proceedings

1  Better Homes Depot could, too.

2      MR. BAGWIN:  Your Honor, just from a sampling

3  stand point, they have designated six pattern and

4  practice witnesses from Schedule B who we're going to be

5  taking their depositions.  I went on ACRIS and I looked

6  at the deeds in those particular transactions.  With

7  respect to those transactions, now this is on six

8  transactions, one of them was from individual sellers to

9  ultimate grantees, not a foreclosure situation.  Another

10  one was from a corporate entity called Mr. Foreclosure,

11  Inc., not a foreclosure.

12      MAGISTRATE JUDGE POHORELSKY:  Wait, wait, wait,

13  what was that?  Mr. Foreclosure?

14      MR. BAGWIN:  It's an entity called

15  Mr. Foreclosure, Inc., which is I believe a -- I think

16  it's a company that buys and sells real estate in the

17  boroughs.  I's not a -- it's a company.  It's not a

18  foreclosure situation.  The probably buy houses in

19  foreclosure and then sell them themselves.

20      MAGISTRATE JUDGE POHORELSKY:  So you're

21  suggesting that Better Homes Depot wasn't involved in

22  that at all.

23      MR. BAGWIN:  I'm not sure.  I mean we'll find

24  out when we go to the deposition, obviously.

25      MAGISTRATE JUDGE POHORELSKY:  But I guess they

84

**Proceedings**

1 said that it was.

2          MR. BAGWIN:  That say that it was.

3          MAGISTRATE JUDGE POHORELSKY:  Okay.

4          MR. BAGWIN:  So I've had individuals.  I saw

5 one from a corporation, not a -- so that's two out of

6 six.  I saw one from, I believe an estate, one directly

7 from a bank, so that's four out of six.  You know, I am

8 not sure, you know, yes we have --

9          MAGISTRATE JUDGE POHORELSKY:  Yes, but it is

10 easy enough for you to go on ACRIS and see how many

11 referee deeds there were; right?

12          MR. BAGWIN:  Absolutely.  But all of that

13 information is not necessarily -- I've seen the referee

14 deeds.  All of the referee information concerning the

15 underlying foreclosure action including index numbers and

16 those things aren't necessarily in the deed.  I depends

17 on the --

18          MAGISTRATE JUDGE POHORELSKY:  But did you

19 check?

20          MR. BAGWIN:  It depends.

21          MAGISTRATE JUDGE POHORELSKY:  I mean, but did

22 you actually well --

23          MR. BAGWIN:  I've looked at some of them.

24          MAGISTRATE JUDGE POHORELSKY:  I mean, there is

25 some -- a lot of resonance to the argument that they make

85

**Proceedings**

1  that, you know your clients having disposed of all of

2  their records, --

3          MR. BAGWIN:  But I understand that.

4          MAGISTRATE JUDGE POHORELSKY:  -- and I say that

5  with quotes --

6          MR. BAGWIN:  I understand that.

7          MAGISTRATE JUDGE POHORELSKY:  -- having

8  disposed of all their records, ought to go through a

9  pretty substantial burden to find out whether these

10 admissions should or should not be made.

11         MR. BAGWIN:  But, your Honor, I don't think --

12         MAGISTRATE JUDGE POHORELSKY:  I guess you did

13 assert that you checked ACRIS.

14         MR. BAGWIN:  Correct.

15         MAGISTRATE JUDGE POHORELSKY:  I think you did

16 say that.

17         MAGISTRATE JUDGE GO:  Okay.

18         MR. BAGWIN:  But the other thing is, your

19 Honor, going to the Court files may not be necessarily

20 dispositive --

21         MAGISTRATE JUDGE POHORELSKY:  May not be.

22         MAGISTRATE JUDGE GO:  May not be.

23         MR. BAGWIN:  -- of the issue.

24         MAGISTRATE JUDGE POHORELSKY:  But if you do

25 that, then you can se we went to the Court files and we

86

**Proceedings**

1  found this and therefore we couldn't say yes or no.

2          MR. BAGWIN:  Okay.

3          MAGISTRATE JUDGE GO:  Okay.

4          MAGISTRATE JUDGE POHORELSKY:  Or we found that

5  we weren't involved in this as an acquire.

6          MR. BAGWIN:  Absolutely.  But, you know,

7  there's a situation --

8          MAGISTRATE JUDGE GO:  I have --

9          MR. BAGWIN:  -- you know, the questions are

10  very specific.  Did we acquire title.  Acquire title is

11  whether or not we received the deed.  It doesn't -- you

12  know, if I don't see a deed and there's no deed in a

13  court file, you know, Mr. Wagner talks about

14  circumstantial evidence and, you know, you can surmise

15  and do this or that but if there is no deed, we don't see

16  a deed, it's very hard for us to admit or deny whether or

17  not we actually acquired title because there's other

18  circumstances where money is paid in these real estate

19  transactions where we may not buy -- we could be a

20  contract vendee, there could be assignment of --

21          MAGISTRATE JUDGE POHORELSKY:  What does that

22  mean, contract vendee?

23          MR. BAGWIN:  Where we basically assigned our

24  contract rights in a --

25          MAGISTRATE JUDGE GO:  It's a contract

87

**Proceedings**

1   (inaudible).

2          MR. BAGWIN:  -- from our -- to our ultimate

3   purchaser.

4          MAGISTRATE JUDGE POHORELSKY:  In other words,

5   you purchased a contract of sale --

6          MAGISTRATE JUDGE GO:  You agreed -- no, no, no.

7          MAGISTRATE JUDGE POHORELSKY:  -- from --

8          MAGISTRATE JUDGE GO:  You sign a contract

9   agreeing to buy a home.

10         MAGISTRATE JUDGE POHORELSKY:  Right.  Somebody

11  -- you agree to buy a property from somebody and instead

12  of you buying it, you sell your right to buy it to

13  somebody else.

14         MR. BAGWIN:  Right.  Correct.

15         MAGISTRATE JUDGE POHORELSKY:  Okay.  Great.

16  I'm learning a little bit.

17         MR. BAGWIN:  And also, you know, we could also

18  be -- there could be an assignment of bed.

19         MAGISTRATE JUDGE GO:  Okay.  We understand.

20  Okay.

21         MR. BAGWIN:  So there are instances where we

22  wouldn't necessarily acquire title.

23         MAGISTRATE JUDGE GO:  When was --

24         MR. BAGWIN:  We may never have acquired title.

25         MAGISTRATE JUDGE GO:  Mr. Bagwin, we have

88

### Proceedings

1   Mr. Wagner, who may reluctantly agree but he may have no

2   choice in this matter as to identify the 70 some

3   properties in which you are aware of a referee's deed

4   being (inaudible).

5           MR. WAGNER:  Your Honor, I would be glad to do

6   that but I do want to point out that there's nothing

7   magic about whether they got title from a referee or from

8   HUD or from a bank because --

9           MAGISTRATE JUDGE GO:  Well --

10          MR. WAGNER:  -- the proof that Mr. Bagwin does

11  not make mention of is if he assigned his contract to

12  bond, then he wouldn't have paid the full price to the

13  seller.  He assigns -- he gets money from the assignee

14  and they pay the seller.

15          MAGISTRATE JUDGE GO:  Well, that's true but

16  that's not necessarily fraudulent conduct.  Now my

17  question is with respect to the remaining properties on

18  Schedule B, is it your contention that the deeds

19  transferring title to the ultimate purchasers were also

20  altered because that may make them somewhat different.  I

21  was under the impression that all of the Schedule B

22  properties involved referees deeds and apparently not.

23          MR. WAGNER:  No, your Honor, we didn't say that

24  and we didn't mean to suggest that.  Those were the most

25  common and we thought that those were the most easy to

89

**Proceedings**

1    prove because there's always a referee's report.

2              MAGISTRATE JUDGE GO:  Now my question is are

3    you contending that those other deeds were also altered?

4              MR. WAGNER:  Yes, your Honor.  We are.  So for

5    instance, if Better Homes Depot purchased from HUD or

6    purchased from a bank who had acquired a deed in lieu or

7    purchased from the estate of a family, right, it -- the

8    relationship -- say they bought it for 150 and they sold

9    it for 300, if they got title from the family that they

10   paid for the property, the estate sold it to Fessler for

11   150 and gives him a deed whiting out Better Homes Depot's

12   name and having Gail Zucker hand write in the ultimate

13   buyer's name is no different than doing that in a referee

14   situation and proving he acquired title at least

15   circumstantially would be by the fact that he would have

16   paid the estate.  He would have paid HUD.  He would have

17   paid the bank who got the deed in lieu of foreclosure.

18             MAGISTRATE JUDGE GO:  Okay.  Look, I understand

19   your point.  What is it that makes you think that those

20   other properties involved altered deeds?

21             MR. WAGNER:  The exact same --

22             MAGISTRATE JUDGE GO:  Other than the same cast

23   of characters because we do know from Schedule A

24   properties that we have the same cast of characters but

25   the deeds weren't altered.

90

## Proceedings

1     MR. WAGNER:  Your Honor, a couple -- we had

2 during the deposition, if you remember in the Borcher

3 Genovese turn over of those 36 files, there were four or

4 five files about which we inquired of Mr. Sultzer and

5 subsequently of Mr. Fessler and of Ms. Zucker, who took

6 the Fifth Amendment with regard to them, one was I think

7 from Citibank, one was from Andrew Cuomo, as secretary of

8 HUD, and two or three were foreclosure cases.  And in

9 every one of those deeds, even in some of them, you talk

10 about the second page with the little caption, Better

11 Homes Depot was taken out.  Gail Zucker hand wrote in the

12 name of the buyer but then when you looked on page 2, you

13 know, the little sort of second mini caption on the

14 second page of the deed, it would say Citibank to Better

15 Homes Depot.  So they forgot to white out and hand write

16 in on the second page.

17     So you can do the same thing, whether you're

18 buying from a referee in foreclosure or an estate or HUD.

19     MAGISTRATE JUDGE GO:  Okay.

20     MR. WAGNER:  It's the exact same process.

21     MAGISTRATE JUDGE GO:  Okay.

22     MR. BAGWIN:  You know, I just want to point out

23 that and maybe Mr. Wagner can enlighten the Court because

24 I certainly can't, out of these 96 forged or altered

25 deeds that he claims there are, we know of no instances

## Proceedings

1  where there have been any title issues with respect to

2  any kind of litigations concerning title.  Many of these

3  people have refinanced their homes, according to ACRIS

4  and have no -- apparently no title issues, because new

5  mortgages were recorded with different banks.  Many of

6  these people have sold their homes.  So I don't know

7  where the problem is, where the --

8          MAGISTRATE JUDGE POHORELSKY:  The problem is --

9          MR. BAGWIN:  And there's also a ten year

10  statute of limitations which has now run.

11          MAGISTRATE JUDGE GO:  Well, no.

12          MAGISTRATE JUDGE POHORELSKY:  Yes, but it has

13  nothing to do with whether people got good title, that's

14  not the -- or marketable title; right?  It all has to do

15  with whether they can show that the cast of characters

16  here participated in a fraud that was related to a real

17  estate transaction and even though it wasn't a fraud that

18  their clients were involved in, that fraud is somehow --

19          MAGISTRATE JUDGE GO:  Or the same kind of fraud

20  as the plaintiffs (inaudible).

21          MAGISTRATE JUDGE POHORELSKY:  Yes, or even the

22  same kind of fraud.  That's right.  You know, ultimately

23  one of the real problems in trying to figure out what

24  remedy to afford for destruction of records that should

25  have been kept is trying to figure out how important

92

## Proceedings

1  those records were and how significant they were.  And I

2  am not convinced about the significance of them.

3          MR. WAGNER:  Your Honor, in terms of --

4          MAGISTRATE JUDGE POHORELSKY:  But I have heard

5  enough.

6          MR. WAGNER:  Okay.

7          MAGISTRATE JUDGE POHORELSKY:  I've heard

8  enough, believe me.

9          MAGISTRATE JUDGE GO:  Let me just give all the

10  parties a week to supplement anything they want after

11  having heard our comments.

12          MAGISTRATE JUDGE POHORELSKY:  Yes, hold on just

13  a second because I may have overlooked a question or two

14  if you don't mind.

15          MAGISTRATE JUDGE GO:  Go ahead and look.  So

16  that would mean April 10.  And then if you have this

17  pressing need to reply, April 14.

18          MS. LENOWITZ:  Can I please be included in that

19  insofar as Judge Pohorelsky will reiterate --

20          MAGISTRATE JUDGE GO:  Oh, yes.

21          MAGISTRATE JUDGE POHORELSKY:  Oh, yes.

22          MS. LENOWITZ:  -- revisit my --

23          MAGISTRATE JUDGE POHORELSKY:  I am, in fact

24  thinking that --

25          MS. LENOWITZ:  Okay.

93
## Proceedings

1    MAGISTRATE JUDGE POHORELSKY:  I will be honest

2  with you, I have been thinking about reconsidering that

3  aspect because I am not --

4    UNIDENTIFIED SPEAKER:  Your Honor, I am --

5    MAGISTRATE JUDGE POHORELSKY:  I'm not adverse

6  to reconsider rulings in light of the fact that other

7  premises upon which that ruling was based turned out not

8  to exist.

9    MR. WAGNER:  Your Honor, I am going to be out

10  of the country the week of the 14th.

11    MAGISTRATE JUDGE GO:  Okay.

12    MR. BAGWIN:  Your Honor, before you deal with

13  that and I hate to make this more of a mess, I am

14  actually going to be out of the country starting Saturday

15  until the 12th.  So if I have to respond to Mr. Wagner, I

16  have no problem with doing that.  I don't know what I am

17  supplementing right now except for maybe to respond to

18  the issue you brought up with him on the issue of the

19  Schedule B evidence.

20    MAGISTRATE JUDGE POHORELSKY:  Well you have the

21  Sultzer information.

22    MR. BAGWIN:  I actually think based on what you

23  asked him, him and I are on the same, you know,

24  interpretation of Sultzer's testimony.  I think the key

25  is the representation that Sultzer did all of those

94

**Proceedings**

1  acquisition and I don't think even Mr. Wagner remembers

2  his deposition saying all either.  So I think him and I

3  could work together to submit the same evidence.  But in

4  terms of -- I have no problem if I only have to reply to

5  his and then doing that the date you set.

6          MAGISTRATE JUDGE GO:  Okay.  Well then I will

7  extend the time perhaps the 16th or -- the 17th for the

8  initial set of responses and then any reply will be the

9  23rd.

10         MR. WAGNER:  Your Honor, I am pretty sure the

11  only thing that we're going to do and the 17th is fine

12  with us, is on the 404(b) issue and --

13         MAGISTRATE JUDGE GO:  Right, that's fine.

14  That's fine.

15         MAGISTRATE JUDGE POHORELSKY:  I do have a

16  question about --

17         MAGISTRATE JUDGE GO:  Well if it's the 404 --

18  if that's all you're going to be -- here, Mr. Bagwin, you

19  may need a chance to reply.

20         MR. BAGWIN:  That's true, your Honor.

21         MAGISTRATE JUDGE GO:  So you are urged to make

22  your submissions sooner rather than later.

23         MR. BAGWIN:  Absolutely.

24         MAGISTRATE JUDGE GO:  And obviously the 17th

25  falls on a day when you will already be done, so I will

95

**Proceedings**

1  expect you to file before you leave.

2          MAGISTRATE JUDGE POHORELSKY:  Just so -- to

3  recap what Mr. Wagner's arguments were, the plaintiff's

4  arguments were as to alternate sources for information

5  that would have helped Better Homes Depot, that they

6  didn't consult, which they should have consulted in order

7  to make a good faith effort to respond to the request to

8  admit, that one was Madison Equities files.  The second

9  was bank records.  The third was court records and fourth

10  was to go to the grantors themselves -- grantors -- the

11  referees themselves.  But the Court -- all right.  Now so

12  --

13          MR. WAGNER:  Or other grantors?

14          MAGISTRATE JUDGE POHORELSKY:  What?

15          MR. WAGNER:  Or any other grantor, whoever it

16  was.

17          MAGISTRATE JUDGE POHORELSKY:  Or any other

18  grantors, I suppose, that's right, which would be

19  disclosed where?

20          MR. WAGNER:  Well you know, if Citibank or --

21          MAGISTRATE JUDGE POHORELSKY:  Right.

22          MR. WAGNER:  They had payment --

23          MAGISTRATE JUDGE POHORELSKY:  But would that

24  have been disclosed in the ACRIS records?

25          MR. WAGNER:  Sure.  Every grantor would be --

96

## Proceedings

1        MAGISTRATE JUDGE POHORELSKY:  I see.  Every

2    grantor on the 96 would be -- it would either be a

3    referee or some other --

4        MR. WAGNER:  Right.

5        MAGISTRATE JUDGE POHORELSKY:  So I do want to

6    ask Mr. Bagwin, tell me what the difficulty is, forget

7    about Madison Home Equities but for the time being, but

8    as far as the bank records and actually consulting the

9    grantors themselves.  I mean, you know, that wasn't done.

10   I sort of -- I was skeptical about going after bank

11   records but maybe --

12       MR. BAGWIN:  Your Honor, first of all --

13       MAGISTRATE JUDGE POHORELSKY:  What about your

14   own client's bank records, for goodness sakes?

15       MR. BAGWIN:  First of all, I don't think the

16   bank records again would answer the question that we --

17   whether or not we acquired title.  It's not going to be

18   dispositive on that question.  Whether -- if I see a

19   check, it doesn't mean that I necessarily acquire title.

20   So I still can either admit or deny based on a check.  So

21   I think bank records would be a waste of time.

22       MAGISTRATE JUDGE GO:  I think Mr. Fessler

23   should look at those records, it may refresh his

24   recollection and it's not appropriate for him to

25   summarily refuse to look at them.

97

## Proceedings

1      MR. BAGWIN:  And the other thing is that their

2  properties are purchased from other sources.  They are

3  purchased with not necessarily directly from my client

4  but from other banks, from other lenders that he may use

5  to purchase a property.

6          MAGISTRATE JUDGE POHORELSKY:  But the grantors

7  --

8          MR. BAGWIN:  Things like that, we don't know.

9          MAGISTRATE JUDGE POHORELSKY:  But the grantors

10  of those would be reflected.  I mean, whoever --

11          MR. BAGWIN:  Not necessarily.  Not in our bank

12  records per se.

13          MAGISTRATE JUDGE POHORELSKY:  No, no, no, but

14  they would be reflected in the ACRIS records, wouldn't

15  they?

16          MR. BAGWIN:  The grantors would be more -- yes,

17  they will.

18          MAGISTRATE JUDGE POHORELSKY:  So I mean --

19          MAGISTRATE JUDGE GO:  Okay.

20          MAGISTRATE JUDGE POHORELSKY:  All right.  I

21  think that --

22          MR. WAGNER:  Yes, I just wanted to -- that, you

23  know, taken together a check to a grantor in the amount

24  of the purchasing amount, when combined with a subsequent

25  sale document listing Better Homes Depot as the seller to

98

**Proceedings**

1   a third party, you know, that may not be as good as a

2   deed.  I wish they still had the deeds.  But that's

3   pretty overwhelming evidence that they got title and then

4   sold it to someone else.

5           MAGISTRATE JUDGE POHORELSKY:  All right.

6           MR. BAGWIN:  And again, the bank records may

7   not exist, again proving a negative.

8           MAGISTRATE JUDGE POHORELSKY:  Yes, but they may

9   not, how do we know.

10          MR. BAGWIN:  I know.

11          MAGISTRATE JUDGE POHORELSKY:  Unless you ask,

12  you don't know.

13          MAGISTRATE JUDGE GO:  Okay.

14          MAGISTRATE JUDGE POHORELSKY:  All right.

15  Thanks.  What do we need to do?

16          MAGISTRATE JUDGE GO:  I believe this is all I

17  can do at this point.

18          MAGISTRATE JUDGE POHORELSKY:  Is that about all

19  -- yes, it's about all I can take too.  What else do we

20  have going in my two cases?  Where are we?  You're going

21  to finish up --

22          MR. BAGWIN:  We have depositions scheduled for

23  next week.

24          MAGISTRATE JUDGE POHORELSKY:  -- non-party

25  depositions.

99

**Proceedings**

1          MR. WAGNER:  There's one scheduled for next

2     week in the afternoon and --

3          MR. BAGWIN:  There's six scheduled next week.

4          MR. WAGNER:  Oh, we only --

5          (Counsel confer)

6          MR. WAGNER:  I have none -- Reginald Williams

7     Wednesday afternoon is the only notice we got.

8          MS. LENOWITZ:  We sent all of the notices at

9     the same time.

10         MR. WAGNER:  Peter, I got one.  Did you get

11    any?

12         MR. CROSS:  I don't know.

13         MR. WAGNER:  We haven't even reached out and I

14    was going to tell you we may have to substitute.  The

15    Williams are having some -- Mr. Williams is having some

16    health problems.

17         MAGISTRATE JUDGE POHORELSKY:  Guys, you can

18    talk about this among yourselves now that you're

19    together.

20         MAGISTRATE JUDGE GO:  Why don't you decide this

21    off the record.

22         MAGISTRATE JUDGE POHORELSKY:  But you are --

23         MR. BAGWIN:  We have noticed six depositions

24    for next week.  Now we're hearing that --

25         MAGISTRATE JUDGE POHORELSKY:  Okay, but then

# Proceedings

1  what else?  Are they going to take depositions of any of

2  your folks?

3          MS. LENOWITZ:  No, they are not.

4          MAGISTRATE JUDGE POHORELSKY:  No.  So you're

5  really getting pretty close to the end of depositions,

6  whether they occur next week or the week after next.

7          MR. WAGNER:  Okay, your Honor?

8          MAGISTRATE JUDGE POHORELSKY:  Am I right about

9  that?

10         MR. WAGNER:  Again, we will speak to Mr. Bagwin

11 about this but you know, we don't have notices of the

12 depositions.

13         MAGISTRATE JUDGE POHORELSKY:  Okay.  I am just

14 --

15         MR. WAGNER:  And we haven't reached out to

16 those witnesses.

17         MAGISTRATE JUDGE POHORELSKY:  I'm talking

18 numbers right now.  Will that finish up the --

19         MAGISTRATE JUDGE GO:  Well, anyway you will

20 finish --

21         MR. BAGWIN:  Well we have six depositions

22 scheduled for next week, nothing the following week and

23 another --

24         MS. LENOWITZ:  Four.

25         MR. BAGWIN:  -- four the following week.

**Proceedings**

 1          MAGISTRATE JUDGE POHORELSKY:  And who are

 2  those, also non-parties?

 3          MS. LENOWITZ:  Yes.

 4          MR. BAGWIN:  As far as non-party witnesses;

 5  yes.

 6          MAGISTRATE JUDGE GO:  Identified by them?

 7          MS. LENOWITZ:  And HUD is also --

 8          MR. BAGWIN:  Yes.

 9          MS. LENOWITZ:  -- coming in on the 25th or the

10  24th.

11          MR. BAGWIN:  Then HUD we have on the 24th.

12          MAGISTRATE JUDGE POHORELSKY:  Of April?

13          MS. LENOWITZ:  Yes.

14          MAGISTRATE JUDGE POHORELSKY:  And that will

15  finish things up.

16          MAGISTRATE JUDGE GO:  Okay.

17          MAGISTRATE JUDGE POHORELSKY:  So I guess then

18  we have to get back together.  Do we have another

19  conference scheduled for that?

20          MR. BAGWIN:  I think we have another conference

21  date.

22          MAGISTRATE JUDGE POHORELSKY:  I probably ought

23  to just give -- make a general notice and post it of our

24  next conference, once we get these motions decided.  And

25  who is making the dispositive motions, anybody?

102

## Proceedings

1      UNIDENTIFIED SPEAKER:  We are.

2      MAGISTRATE JUDGE POHORELSKY:  Everybody is.  So

3 we have to have a deadline for seeking a premotion

4 conference with Judge Garaufis on that.

5      MR. WAGNER:  Okay. You gave us those deadlines,

6 I think, your Honor.

7      MAGISTRATE JUDGE POHORELSKY:  I did.

8      MAGISTRATE JUDGE GO:  I did.

9      MR. WAGNER:  You gave separate dates for

10 Judge Gershon and Judge Garaufis but that's in your

11 last --

12      MAGISTRATE JUDGE POHORELSKY:  Oh, good.  So I

13 don't have to worry about that.  So when is that?

14      MR. WAGNER:  One was the June 6 for

15 dispositive, I don't remember which was which but --

16      MS. LENOWITZ:  One was in May.

17      MR. WAGNER:  Oh, one was late May and one was

18 June.

19      MAGISTRATE JUDGE POHORELSKY:  Oh, yes, I have

20 got a whole bunch of things here.

21      MAGISTRATE JUDGE GO:  We'll set a different

22 conference date if we need to but --

23      MAGISTRATE JUDGE POHORELSKY:  It's -- yes, the

24 deadline -- it's May 21.  Okay.  So you still have some

25 time on that.  All right.  So we will schedule another

### Proceedings

1  conference, I will anyway.

2            MR. WAGNER:  Thank you, your Honor.

3            MAGISTRATE JUDGE GO:  We can go off the record.

4  And then we were -- I don't know if it's worthwhile to

5  spend much time and I don't have much time but I did say

6  --

7            (Matter concluded)

8                 -oOo-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

104

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this __**14th**__ day of __**August**__ , 2008.



Rosalie Lombardi
Transcription Plus II

Transcription Plus II        Rosalie Lombardi